Daniel SCHNELLER, a minor, and his parents, Thomas and Cheryl Schneller, Plaintiffs-Appellants-Petitioners,

v.

ST. MARY'S HOSPITAL MEDICAL CENTER, W.C. Mussey, M.D., Defendants-Respondents,

Joel KAUFMAN, M.D. and V.J. Moore, M.D., Defendants.

Supreme Court

*No. 89-0541. Submitted on briefs February 27, 1991.—Decided June 5, 1991.*

(Also reported in 470 N.W.2d 873.)

300

For the plaintiffs-appellants-petitioners the cause was submitted on the briefs of *Casey A. Nagy, Robert J. Gingras,* and *Fox, Fox, Schaefer & Gingras, S.C.,* Madison.

For the defendant-respondent, St. Mary's Hospital Medical Center, the cause was submitted on the brief of *Curtis C. Swanson, Joy L. O'Grosky* and *Axley Brynelson,* Madison.

For the defendant-respondent, W.C. Mussey, M.D., the cause was submitted on the brief of *Bonnie A. Wendorff, Catherine M. Rottier, Bradway A. Liddle, Jr.,* and *Boardman, Suhr, Curry & Field,* Madison.

WILLIAM A. BABLITCH, J. The plaintiffs, Daniel Schneller, a minor, and his parents, Thomas and Cheryl Schneller, (the Schnellers), seek review of a court of appeals' decision affirming the circuit court's grant of summary judgment dismissing their medical malpractice case against the defendants, St. Mary's Hospital Medical Center and three doctors (collectively, St. Mary's). The dismissal of the Schnellers' case was the outcome of the circuit court's order denying the Schnellers' untimely motion to amend the scheduling order to allow them to name liability experts essential to prosecuting their case. The issue is whether the circuit court abused its discretion by denying their motion and precluding them from naming expert witnesses even though the effect of that order was the dismissal of their case. We conclude that the circuit court did not abuse its discretion by denying the Schnellers' motion because the conduct of the Schnellers' initial counsel in failing to comply with the court's scheduling order was without cause. We further

conclude that the effective dismissal of the Schnellers' case was not an abuse of discretion because the circuit court had a rational basis for implicitly determining that the Schnellers' initial counsel's conduct was egregious and without a clear and justifiable excuse. Accordingly, we affirm.

The facts of this case are these. Daniel Schneller was born on December 30, 1978. In December, 1984, his parents were advised by Daniel's new pediatrician that it appeared from Daniel's birth records that there may have been some irregularities in Daniel's delivery. After consulting a second doctor, the Schnellers decided to pursue a medical malpractice claim against St. Mary's. On December 10, 1985, the Schnellers filed a Submission of Controversy with the now-abolished Patient Compensation Panel, alleging that St. Mary's had been negligent in the delivery of Daniel Schneller on December 30, 1978, and that this negligence resulted in Daniel's permanent retardation and mental and emotional disability. On July 7, 1986, they transferred their case to Dane County Circuit Court because of the abolition of the Patient Compensation Panel. The defendants were served with the plaintiffs' summons and complaint on August 15, 1986.

Following a pretrial conference on September 2, 1987, the circuit court issued a pretrial order requiring that the Schnellers name expert witnesses by February 29, 1988. The court also scheduled a settlement conference for September, 1988. The pretrial order stated that the case would be controlled by the indicated schedule "unless modified upon motion of a party or the Court for good cause." In addition, the Order warned:

> Failure to comply with the terms of this Order shall be considered cause for imposing sanctions which may include dismissal, default judgment, con-

tempt, money terms, orders limiting or barring the presentation of testimony or introduction of evidence at trial, or any combination thereof, or such other added and further sanctions as the Court may deem appropriate under the circumstances.

On February 29, 1988, the Schnellers designated thirteen expert witnesses as required by the court's order. None of these thirteen experts was a liability expert. At this time, the Schnellers also moved the court to enlarge the time to name expert witnesses by 30–45 days. This motion, which was never pursued, stated that additional time was necessary to obtain expert review and response to recently obtained neurological evidence.

On March 8, 1988, the Schnellers and St. Mary's entered into a courtesy agreement to allow the Schnellers until April 19, 1988, to produce a liability expert for deposition. On April 6, 1988, St. Mary's warned the Schnellers that they would move for summary judgment if the Schnellers did not produce a liability expert as agreed by April 19, 1988. The Schnellers neither named nor produced the witness, and they never applied to the court for further extension of the time limit for naming experts.

St. Mary's moved the court to preclude the Schnellers from naming any additional experts. At the scheduled hearing on this motion on April 28, 1988, the Schnellers' attorney requested permission to withdraw from the case. The circuit court granted his request, postponed the hearing on St. Mary's motion, and granted the Schneller's new counsel ten days to file motions.

On May 4, 1988, the Schneller's new counsel moved to extend the period of time for naming experts by sixty days. On May 5, 1988, the Schnellers named two doctors as liability experts. On May 10, 1988, the Schnellers

submitted an affidavit in support of its motion to enlarge time which introduced a report from one of the proposed liability experts outlining his preliminary opinion that St. Mary's had committed various acts of negligence in Daniel's delivery.

At the hearing on both parties' motions on June 10, 1988, the Schnellers emphasized that their new counsel had taken prompt remedial action to name liability experts and that these experts' depositions could be taken in plenty of time for the September, 1988 settlement conference to take place as scheduled. St. Mary's emphasized that the Schnellers' motion should not be granted because they had not presented any reason whatsoever for not naming liability experts by the ordered date of February 29, 1987, or within the forty-five day extension they had requested.

In an order dated October 3, 1988, the circuit court denied the Schnellers' motion seeking to extend the time for naming experts and granted the defendants' motion to preclude the Schnellers from naming additional experts. The circuit court found that the Schnellers' May 4, 1988 motion to enlarge time was untimely and determined that under sec. 801.15(2)(a), Stats., the Schnellers' motion should not be granted because they had failed to state any cause or to establish excusable neglect for their failure to meet the court-ordered deadlines for naming expert witnesses. The court also found that it was in the interests of justice to deny the Schnellers' motion because of the dilatory behavior of the Schnellers' original counsel, the prejudice to St. Mary's caused by the ten year gap since the alleged negligent acts had occurred, and the interference with the orderly administration of justice that is caused when parties fail to comply with scheduling orders.

The court also emphasized its view that the Schnellers and their attorneys, by not having procured a liability expert in the years since initiating their action, had violated "a responsibility to each other, to the persons they claim against, to the courts and to the whole fabric of society to have some idea and basis for their travels before they get so totally into the process."

Subsequently, St. Mary's moved for summary judgment on the ground that the Schnellers had failed to substantiate their medical malpractice claim with expert medical testimony. The Schnellers responded to that motion with a letter to the court conceding that summary judgment was appropriate in view of the court's refusal to allow the Schnellers to formally name liability experts. The circuit court granted St. Mary's motion for summary judgment and dismissed the Schnellers' case. The court of appeals affirmed.

The primary issue in this case is whether the circuit court abused its discretion by precluding the Schnellers from naming expert liability witnesses even though the effect of that order was the dismissal of the Schnellers' case. The Schnellers also raise the issue of whether the effective dismissal of their cause of action by the circuit court unfairly deprived them of their fundamental due process right to prosecute their case.

The decision of whether a scheduling order will be modified is within the circuit court's discretion, and its decision will only be reversed for an abuse of discretion. *Alexander v. Riegert,* 141 Wis. 2d 294, 298, 414 N.W.2d 636 (1987). Similarly, the circuit court's decision to dismiss an action is discretionary and will not be disturbed unless the party claiming to be aggrieved establishes that the circuit court has abused its discretion. *Johnson v. Allis Chalmers Corp.,* 162 Wis. 2d 261, 273, 470 N.W.2d

859 (1991). A discretionary decision will be sustained if the circuit court has examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach. *Loy v. Bunderson,* 107 Wis. 2d 400, 414–15, 320 N.W.2d 175 (1982). The test is not whether this court as an original matter would have denied the motion; it is whether the circuit court abused its discretion in doing so. *Johnson* at 273.

We hold that the circuit court did not abuse its discretion by denying the Schnellers' motion to enlarge time to name experts. The court had a rational basis for concluding that the Schnellers had not shown cause for their failure to name experts in accordance with the scheduling order. We also hold that it was within the circuit court's discretion to effectively dismiss the Schnellers' case because there was a rational basis for the court's implicit determination that the conduct of the Schnellers in failing to comply with the scheduling order was egregious and without a clear and justifiable excuse. Consequently, it was within the circuit court's discretion to deny the motion to enlarge time even though the effect of that order was the dismissal of their case.

The Schnellers' first argument is that the circuit court abused its discretion by applying an erroneous legal standard to the Schnellers' motion to amend the scheduling order. The Schnellers argue that the circuit court erred as a matter of law by applying sec. 801.15(2)(a), Stats., stated in full below,[1] rather than sec.

---

[1] **801.15. Time . . ..** (2) (a) When an act is required to be done at or within a specified time, the court may order the period enlarged but only on motion for cause shown and upon just terms. The 60 day period under s. 801.02 may not be enlarged. If the motion is made after the expiration of the specified time, it shall not be granted unless the court finds that the failure to act was the

802.10, which expressly applies to motions to amend calendar orders. They claim that under the "cause" standard, their motion to enlarge time to allow them to name the liability experts essential to their case should have been granted. We disagree. The circuit court applied the proper standard of law by expressly finding that there was no cause for the Schnellers' failure to comply with the scheduling order.

The standards and procedures governing pretrial calendar orders appear in sec. 802.10, Stats. Section 802.10(2) provides that "[a]ny order made under this section may on the court's own motion, or upon motion of a party for cause shown, be amended." Section 802.10(3)(b) provides:

> *Scheduling order.* The judge shall issue a written order which recites the schedules established. Such order when entered shall control the course of the action, unless modified as herein provided. If at any time it appears that such schedules cannot reasonably be met, the judge may amend the order upon timely motion of any party. Whenever the judge shall determine that he cannot reasonably meet the pretrial date or trial date established, he may amend the order on his own motion.

Section 802.10(3)(d) provides that a violation of a scheduling order is subject to sanction under sec. 805.03.[2]

---

result of excusable neglect. The order of enlargement shall recite by its terms or by reference to an affidavit in the record the grounds for granting the motion.

[2]Section 805.03, Stats., provides that sanctions may be imposed "as are just, including but not limited to orders authorized under s. 804.12(2)(a)." Section 804.12(2)(a) authorizes the circuit court to impose any of the following as a sanction: " 'imprisonment for contempt, an order that designated facts be taken as established, an order refusing the delinquent party the

Section 802.10(3)(d), Stats., is a discretionary statute. If the circuit court finds cause for amending the scheduling order, the court *may* amend its original scheduling order. The circuit court expressly stated that the Schnellers "failed to state any cause" for not designating their liability experts by the deadline set by the scheduling order. The record amply supports that finding. In addition, the court clearly expressed its view that even if cause had been shown, it would have denied the motion because it was not in the "interests of justice" to grant relief to the Schnellers. Therefore, we conclude that there was no abuse of discretion by the circuit court in applying the legal standards governing the modification of scheduling orders.

In most cases the circuit court's reasonable determination that the moving party had not shown cause for amending the scheduling order would be sufficient in itself to satisfy us that the court properly exercised its discretion in denying the motion to amend. In this case, however, the denial of the Schnellers' motion to amend the scheduling order had the severe effect of causing the ultimate dismissal of the Schnellers' case. Therefore, we must further evaluate the court's actions under the standards we set forth in *Johnson* governing the dismissal of an action as a sanction for a party's failure to comply with court orders.

The Schnellers argue that the circuit court erred as a matter of law by ignoring this court's policy favoring

right to support or oppose designated claims or defenses, striking out pleadings or parts of pleadings, rendering judgment by default, dismissal of the action or of a claim therein, or assessment of expenses and attorneys fees . . ..' " *Johnson* at 274 (quoting Judicial Council Committee's Note—1974 for sec. 804.12).

the disposition of claims on their merits instead of through considerations of calendaring practice. In support of this argument, the Schnellers rely primarily on *Alexander,* 141 Wis. 2d at 299, in which we stated that "[t]he constraints of a scheduling order should yield to permit a trial of the true controversy between the parties and the full exposition of all available relevant facts." The Schnellers also assert that the similar facts of *Alexander,* in which this court granted a motion to amend a scheduling order, compels granting them the same relief in this case.

The issue in *Alexander* was whether the circuit court had abused its discretion by denying the plaintiffs' untimely motion to amend a scheduling order in order to name additional experts. The plaintiffs had designated their expert witnesses as required by the scheduling order, but, after their initial counsel was ordered by the court to withdraw from the case due to a conflict of interest, their new counsel sought to name additional experts who they believed were essential to the successful prosecution of the case. The circuit court denied the plaintiffs' motion to modify the scheduling order.

We held that the circuit court abused its discretion by denying the motion because it failed to consider the plaintiffs' interest in having a fair presentation of their case. *Alexander,* 141 Wis. 2d at 295. Our decision was motivated by the concern that the conflict of interest on the part of the original counsel had infringed on the plaintiff's right to "the single-minded representation of an advocate devoted exclusively to their interests." *Id.* at 300. Because the record was unclear as to whether the conflict of interest had tainted the prior attorney's performance, we concluded that the plaintiffs should be permitted to name additional experts. We emphasized that the circuit court must balance the integrity of the sched-

uling order and the fact of the defendant's completion of trial preparation against the plaintiffs' interest in having a fair presentation of their case. *Id.* In addition, we noted that even if the circuit court grants an untimely motion to amend, the court may still impose sanctions, such as attorney's fees, against the moving party for violating the court's original scheduling order. *Id.* at 301.

*Alexander* demonstrates that the primary concern of the circuit court when addressing an untimely motion to amend a scheduling order is on accommodating the conflicting interests in permitting parties to fully present their case, in preventing prejudice to the opposing party, and in deterring litigants from flaunting court orders and interfering with the orderly administration of justice. The circuit court must consider whether the moving party has demonstrated cause for amending the scheduling order and whether the interests of justice would be served by granting the amendment. In some cases, such as in *Alexander,* the gross unfairness of denying a motion to amend a scheduling order requires that the motion be granted. However, we have repeatedly recognized that the court has the discretion to dismiss the case as a sanction if the conduct of the moving party in failing to obey the court's scheduling order is egregious and there is no clear and justifiable excuse for the conduct. *See, e.g., Johnson,* 162 Wis. 2d 261, 275. *Trispel v. Haefer,* 89 Wis. 2d 725, 732–33, 279 N.W.2d 242 (1979). The circuit court's broad discretion in addressing untimely motions to amend scheduling orders, which permits the court to take steps ranging from granting the requested relief to dismissing the moving party's case, is absolutely essential to the court's ability to efficiently and effectively administer its calendar.

When the circuit court denied the Schnellers' motion to amend its scheduling order to name additional experts, it effectively dismissed their case as a sanction for their conduct in failing to comply with the scheduling order. It is clear from the record that the Schnellers were in violation of the court's scheduling order and, consequently, they were subject to sanctions. Therefore, the real question is whether the circuit court abused its discretion under these facts by essentially dismissing the Schnellers' case as a sanction for violating the scheduling order.

In today's decision in *Johnson,* 162 Wis. 2d 261, 275–277, we reiterated the established standards relating to the dismissal of a case by the circuit court as a sanction for failing to obey the court's scheduling and discovery orders. We stated that "we will sustain the sanction of dismissal if there is a reasonable basis for the circuit court's determination that the noncomplying party's conduct was egregious and there was no 'clear and justifiable excuse' for the party's noncompliance." *Id.* at 276–277.

Since the court's order operated as a dismissal, the Schnellers' conduct in failing to comply with the court's order must have been egregious to sustain the dismissal. Although the circuit court did not expressly state that the conduct of the Schnellers' initial counsel was egregious or in bad faith, the court's discussion of the case makes it clear that its decision to deny the Schnellers' motion was motivated by its view that the violation of the scheduling order was egregious. An implicit finding of egregious conduct or bad faith by the circuit court in dismissing a cause of action is sufficient if the facts provide a reasonable basis on review for the court's conclusion. *See Englewood Apartments Partnership v.*

311

*Grant & Co.,* 119 Wis. 2d 34, 39 n.3, 349 N.W.2d 716 (1984) (recognizing that "a remand directing the trial court to make an explicit finding where it has already made unmistakable but implicit findings to the same effect would be both superfluous and a waste of judicial resources.").

We conclude that the circuit court was within its discretion in dismissing the Schnellers' case because there was a reasonable basis for the court to determine that the Schnellers' counsel's conduct was egregious and without a clear and justifiable excuse. It is also apparent from the record that the circuit court properly exercised its discretion by examining the relevant facts and applying the proper legal standards. Contrary to the assertions of the Schnellers, *Alexander* does not compel us to grant the motion to amend, because the record establishes that the circuit court considered the policy favoring the disposition of cases on their merits, but determined that the serious nature of counsel's violation of the scheduling order warranted denying the order despite the drastic result.

The circuit court recognized that its decision to preclude the Schnellers from naming liability experts would ultimately lead to the dismissal of their case, but concluded that the conduct of the Schnellers' original counsel justified denying the motion despite the consequences. Contrary to the Schnellers' assertions, the circuit court did consider the policy favoring deciding a case on its merits. The crux of the circuit court's decision was summed up as follows:

> Although this Court is not only mindful, but also sympathetic to having parties 'have their day in court,' there does come a time when, after days have stretched to weeks, months and years with no basis

for a claim asserted and it is effectually admitted that such a basis has not been found, when, after extention (sic) of time to find such a basis have been accepted and still no basis found and when, even after the final Court direction to an end date for factual presentations, the plaintiffs attempt to further add to the record, the Court must call a halt. This the Court has done in its findings and rulings.

The court viewed the Schnellers' failure to comply with the scheduling order as an egregious violation in large part because of the integral role liability experts play in a medical malpractice case. The court emphasized that after over two years of litigation the Schnellers had apparently not verified the basis for their entire action. The Schnellers' original counsel was fully informed by the terms of the scheduling order that these experts needed to be produced by February 29 and that sanctions, including dismissal, could be imposed for failing to comply with the scheduling order. St. Mary's cautioned the Schnellers' counsel of the consequences for failing to name liability experts and gave the Schnellers a grace period to name the experts. Despite the obvious consequences of failing to comply with the scheduling order, the Schnellers' counsel did not take advantage of the grace period or pursue an extension beyond that requested in the original motion to enlarge time.

These facts present an adequate basis to sustain the circuit court's implicit finding that the Schnellers' counsel's conduct in failing to comply with the discovery order was egregious and merited dismissal. As the circuit court emphasized, "[p]laintiffs' original counsel made no serious attempts to meet the specified deadlines." The scheduling order was not nominal; it involved naming

experts who were necessary to substantiate the Schnellers' cause of action.

The circuit court's primary basis for denying the motion, its concern that granting the motion would "encourage dilatory behavior by counsel" and interfere with the court's capacity "to control disposition of cases on its docket with economy of time and effort," is entirely justified given the integral role liability experts play in a medical malpractice action. If a litigant refuses to take a court's scheduling order seriously when it is apparent to all that the failure to name experts as required by the order will prove fatal to the litigant's case, it is reasonable for the circuit court to conclude that only a drastic sanction such as dismissal will effectively convey to the litigant and future litigants that scheduling deadlines must be obeyed. As we stated in *Trispel v. Haefer,* 89 Wis. 2d at 733, it is "the 'duty' of trial courts . . . to discourage protraction of litigation and to 'refuse [the courts'] aid to those who negligently or abusively fail to prosecute the actions which they commence.' " (quoting *Smith v. Carter,* 141 Wis. 181, 184, 122 N.W. 1035 (1910)).

The Schnellers also argue that it was inappropriate to deny their motion to amend the scheduling order because their new counsel promptly corrected the violation in time to prevent prejudice to St. Mary's or delay of the trial date. In *Johnson,* 162 Wis. 2d 261, 282, we held that the circuit court's discretion to dismiss a case is not dependent on a showing that the opposing party has been actually prejudiced by the delay. Where, as here, the conduct of the plaintiffs threatens the orderly administration of justice and the authority of the circuit court, it is within the circuit court's discretion to dismiss

314

the action. *See Johnson,* 162 Wis. 2d at 282. Plaintiffs are bound to follow the dictates of the scheduling order. They are not at liberty to flaunt that order and expect to not be penalized because they believe no delay or prejudice will result from the violation.

The Schnellers also failed to provide a clear and justifiable excuse for their failure to comply with the court's scheduling order. The only explanation ever given for failing to meet the deadline for naming experts was provided in an affidavit in support of the Schnellers' first motion to enlarge time in which their attorney stated that more time was necessary because a neurologist had recently seen Daniel and his evaluation was that there had been a change in the severity and nature of Daniel's injury. This information does not begin to explain why no experts were procured regarding liability before that time. Nor does it explain why the Schnellers' attorney never introduced this evidence during the grace period or timely requested additional time to name his liability experts. Moreover, the fact that the Schnellers' new counsel was able to procure a liability expert within two weeks of being retained by the Schnellers highlights the egregiousness and the lack of excuse for the Schnellers' initial counsel's failure to obtain liability experts.

■■■

We also conclude that although the facts of this case are similar to those in *Alexander,* they do not merit the same result. In *Alexander,* 141 Wis. 2d at 300, we stressed that our decision was motivated by a concern for the plaintiff's right to "the single-minded representation of an advocate devoted exclusively to their interests." We specifically distinguished those situations involving an attorney whose incompetence or negligence may have stemmed from a conflict of interest from those situations where no conflict of interest was present:

315

> This was not a situation involving one attorney asking to revise his or her own approach to a case. Rather, it involved a successor attorney who was unable to present plaintiffs' case properly due to a prior attorney's judgment or decisions which may have been at least influenced by a real or apparent conflict of interest. *Id.* at 301.

In addition, we emphasized that even where there was a conflict of interest, it may be appropriate to deny a motion to amend a scheduling order if the party's right to effective representation had not been affected by the conflict of interest. *Id.* By no means does *Alexander* stand for the proposition that a motion to amend a scheduling order should be granted if a party obtains new counsel and the initial counsel was incompetent or negligent. We emphasized in *Johnson,* at 284, that our prior decisions establish that a "litigant has no right to avoid the consequences of his attorney's conduct by disavowing the actions of counsel." Nor, as the circuit court noted, should the plaintiffs be permitted to expect to "salvage a lawsuit by mere substitution of counsel . . .." The Schnellers' remedy in this case for their attorney's incompetence is a malpractice action. *Id.* at 285.

■ The record reflects that the circuit court properly exercised its discretion by weighing the extreme effect of its decision on the Schnellers against the effect of the Schnellers' conduct on St. Mary's and the orderly administration of justice as a whole. Although this court may have decided the issue differently, we conclude that the circuit court applied the proper standards of law to the facts on record in deciding that the interests of justice compelled denying the Schnellers' motion. Under the facts of this case, a reasonable judge could conclude that the conduct of the Schnellers in failing to comply

with the scheduling order was egregious and without a clear and justifiable excuse. Therefore, we conclude that the circuit court did not abuse its discretion by effectively dismissing the Schnellers' case.

■■■■

We find no merit to the Schnellers' contention that the effective dismissal of their case violated their due process right to prosecute their case. We have consistently held that it does not violate due process when a party's case is dismissed for their egregious conduct in failing to comply with court orders. *See Trispel,* 89 Wis. 2d at 736–37; *Johnson,* 162 Wis. 2d 261, 280 n.5. The Schnellers had sufficient notice through the scheduling order itself and through sec. 802.10(3)(d), Stats., that their failure to comply with the scheduling order would subject them to the possibility of dismissal of their case.

We conclude that the circuit court had a rational basis for implicitly finding that the Schnellers' conduct in failing to comply with the court's scheduling order was egregious and without a clear and justifiable excuse. The circuit court was, therefore, within its discretion in denying their motion to amend the scheduling order and in precluding them from naming liability experts even though their case was dismissed as a consequence. Accordingly, we affirm.

*By the Court.*—The decision of the court of appeals is affirmed.

SHIRLEY S. ABRAHAMSON, J. (dissenting). For the reasons set forth in my concurring opinion in *Johnson v. Allis Chalmers Corp.,* 162 Wis. 2d 261, 287, 470 N.W.2d 869 (1991), I would reverse the order of the circuit court in this case granting defendants' motion to preclude the plaintiffs from naming liability experts essential to the prosecution of their case.

317

The majority opinion concludes that "under the facts of this case, a reasonable judge could conclude that the conduct of the Schnellers in failing to comply with the scheduling order was egregious and without a clear and justifiable excuse." Majority op. at 316.

I believe the circuit court abused its discretion in effectively dismissing the minors' and parents' causes of action because original counsel failed to comply with court orders without considering the Schnellers' (the parents') personal fault for the conduct of the original counsel. *Johnson v. Allis Chalmers Corp.,* 162 Wis. 2d 261, 287, 470 N.W.2d 859 (Abrahamson, concurring).

The Schnellers' original counsel was substituted on April 28, 1988. Substituted counsel for the Schnellers promptly took steps to remedy the failure of original counsel to comply with the court scheduling order. On June 10, 1988 the circuit court held a hearing on all pending motions, including the defendants' motion to preclude the plaintiffs from naming experts. The Schnellers were not present. No evidence was presented; counsel for the parties argued the motions. Substituted counsel for the Schnellers argued to the circuit court that the Schnellers were personally blameless for any problems in pretrial discovery.

The circuit court did not decide the motions on June 10, 1988. It held its decision in abeyance and declared that no further affidavits or proposals, other than proposed findings and orders, should be presented. On June 24, 1988, the Schnellers' substituted counsel requested an evidentiary hearing so that the Schnellers could explain to the circuit court that they were not personally at fault for their original counsel's failure to name liability experts. Counsel filed affidavits from both Schnellers, detailing their care in selecting original counsel, their frequent communications with counsel, and

their keeping abreast with pretrial discovery, including reading depositions.

On October 3, the circuit court entered its order, along with findings of fact and conclusions of law and an "Amplification of Findings and Conclusions." The circuit court stated that "I do not feel that it is appropriate to meet with the plaintiffs. I do not feel it is appropriate to reopen evidence. At some point responsibility and finality must be ascertained."

I dissent because I conclude that the circuit court abused its discretion by not considering the personal responsibility or fault of the Schnellers for the conduct of the original counsel. The circuit court may in its discretion decide to impute counsel's conduct to the litigant, but a proper exercise of this discretion requires, in my opinion, consideration of the litigant's personal fault or responsibility.

For the reasons set forth above and in my concurrence in *Johnson v. Allis Chalmers Corp.,* 162 Wis. 2d 261, 287, 470 N.W.2d 859 (1991), I dissent.