BELL, METZNER & GIERHART, Plaintiff-Respondent,

v.

Walter W. STERN, Appellant,

Raymond W. HAMM, Respondent.

Court of Appeals

*No. 90-0906. Submitted on briefs March 8, 1991.—Decided September 12, 1991.*

(Also reported in 477 N.W.2d 289.)

For the appellant the cause was submitted on the briefs of *Walter W. Stern III* of *Stern, Caviale & Stern* of Kenosha.

For the plaintiff-respondent the cause was submitted on the briefs of *Stephen P. Juech* and *Tamara A. Hayes* of *Frisch Dudek, Ltd.* of Milwaukee.

Before Gartzke, P.J., Dykman and Sundby, JJ.

GARTZKE, P.J. Attorney Walter Stern appeals from an order against him and in favor of the law firm Bell, Metzner & Gierhart for $4,850.82 attorney's fees and costs. The primary issues are whether the trial court had statutory authority to award attorney's fees and whether it abused its discretion in doing so. We conclude that the court intended to award fees under sec. 804.12(2), Stats., which authorizes a fee award for failing to comply with a discovery order, and the court did not abuse its discretion. We affirm.

The law firm represented Raymond Hamm in an action to obtain retirement disability benefits from a municipality. In May 1986, the firm began this suit against Hamm to recover its fees. Attorney Stern answered and counterclaimed on Hamm's behalf. The counterclaim is based on legal malpractice. The trial court issued a scheduling order on June 6, 1988, setting a trial date and establishing deadlines for identification of witnesses, motions, and discovery. The order warned that failure to comply with its terms was cause for sanctions.

On June 28, 1988, Stern named two expert legal witnesses, Attorneys Linda Vanden Heuvel and James

35

Mazik. In August 1988, the law firm sent interrogatories to Hamm for the experts' opinions. The firm wrote to Stern three times requesting answers, and in mid-November it moved to compel answers. About that same time, the firm received vague answers, and on December 6, 1988, the trial court ordered Hamm to provide more specific answers and extended the deadlines in the scheduling order. About a week later, the law firm received sworn answers by Hamm and Stern, setting forth the "opinions" of Vanden Heuvel and Mazik.

In January 1989, Vanden Heuvel and Mazik testified that each had never been asked to review the firm's representation of Hamm or to form an opinion about it and that each had no such opinion. On January 17, 1989, the law firm moved for summary judgment dismissing Hamm's counterclaim. The motion was based on affidavits reciting the efforts of the law firm to take depositions of the experts named by Hamm and the lack of opinions by those experts.

On February 17, 1989, when ruling on the law firm's motion for summary judgment, the trial court noted that Hamm had disclosed two attorneys as expert witnesses, but neither had been retained for that purpose, neither had been asked to review any materials before the trial, and neither had an expert opinion. The court said:

> For defendant's counsel to now claim that he can circumvent this motion for summary judgment by arguing that he intends to educate his expert at trial, and proffer her expert opinion at that time (if she has one), is not only disingenuous, it is wrong. At best, *it is playing fast and loose with the statutory discovery process, and at least, it is tantamount to failure to make discovery for which there can be sanctions under 804.12 Stats . . ..* In no event, can legitimate

> discovery be thwarted or conduct countenanced as
> defendant's counsel proposes. (Emphasis added.)

Nevertheless, the court ordered that within forty-five days, counsel for defendant was to make his experts available for deposition, and after discovery, plaintiff's motion for summary judgment would be supplemented or withdrawn.

On April 10, 1989, the law firm again moved for summary judgment, on grounds that since the court's February 17, 1989, order Hamm had not made his experts available for deposition. A flurry of contradicting affidavits followed that motion.

On May 26, 1989, Hamm stipulated to substituting attorney John Ward for Stern. The law firm objected because it wanted the court to retain jurisdiction over Stern to impose sanctions. Substitution was delayed until the court entered the order for the judgment under appeal.[1]

On June 28, 1989, Stern filed an affidavit offering his own "expert" opinion that the law firm was negligent. On August 2, 1989, the trial court granted the firm's motion for summary judgment. It noted that Stern had not complied with the court's discovery order contained in its previous order. It added that Stern's attempt to withdraw and to name himself as his client's expert witness contradicted his earlier disclosure of experts and violated his obligation under the court's prior order to produce one or both for deposition. It again described Stern's actions as unprecedented

---

[1]Stern argues that the trial court abused its discretion when it delayed the substitution of attorneys. We disagree. We infer that the court declined to immediately order substitution so as to remove any doubt regarding its power to impose sanctions on Stern.

attempts to play "fast and loose" with the system. Based on Hamm's noncompliance with the court's discovery order, the court granted the law firm's motion for summary judgment and dismissed Hamm's counterclaim on its merits.

That order prompted the law firm's motion to recover its attorney's fees and costs from Hamm and Stern. The motion was set for hearing. On February 12, 1990, Stern sent a four-page letter to the trial court which began: "I will not be able to be present at the hearing scheduled on Friday, February 16, 1990, because on a scale of one to ten, ten being the most important, this hearing is about a two."[2] Attorney Ward appeared

---

[2]The letter continued in part:

I am very sorry that you have a lack of understanding concerning expert witnesses, and the need for them . . .. I am also sorry that you have a lack of understanding concerning when an expert witness makes out a prima facie case for summary judgment purposes . . .. I am sorry that you put more credence in a large law firm from Milwaukee, with a reputation of being a negligence mill . . ..

In your opinions, you seem so confident concerning Ms. Vanden Heuvel's inability to be an expert witness, that I almost begin to believe that the court had a crystal ball and could read her mind. However, judges being merely mortals, neither Zeuslike nor descendants from Thor, it is surprising indeed that the court can make so many assumptions to dismiss an individual party's action, and then to say [sic] that you are sympathetic as a professional adjudicator.

. . ..

I did what I could to make available Linda Vanden Heuvel, and I did what I could to notify [opposing counsel] Mr. Juech. Mr. Juech, a young lawyer, who has an unfortunate penchant to practice law like his fellow brethren, believes in doing anything or everything to obtain a certain result, rather than operating within the confines of the rules of law. He hid, like a stowaway, and then is pushing it off on me or John Ward for somehow causing increased costs or causing increased attorneys fees.

Boulderdash! [sic]

38

for Hamm at the hearing. Stern did not appear. Following the hearing, the court found that an award of attorney's fees and costs was appropriate because of Stern's conduct and that the services detailed by affidavit on behalf of the law firm were reasonably and necessarily related to the summary judgment proceedings. The court ordered that judgment be entered for $4,850.82 against Stern and in favor of the law firm.[3] The order granted leave to Stern to withdraw as counsel for defendant and substituted attorney Ward in Stern's place. The judgment was entered and Stern appeals.

We infer that the trial court treated that part of its scheduling order relating to discovery, as well as its subsequent orders, as discovery orders, and that the court relied upon sec. 804.12(2), Stats. (without citing it), to award attorney's fees against Stern. That is the only reasonable inference from the court's several references to discovery.

Section 804.12(2)(a), Stats., provides in substance that if a party does not obey an order to provide or permit discovery, the trial court "may make such orders in regard to the failure as are just, and among others . . . [various orders listed]." Section 804.12(2)(b), Stats., provides:

---

I am sorry for the court in this case, because I see this case coming back from the Court of Appeals or the Wisconsin Supreme Court being reversed for so many reasons it is hard to name them all.

[3]Stern states that the law firm's legal services in prosecuting this action "could not have cost the plaintiff's [sic] anywhere near $5,000.00." To make such a statement is not to argue it. The court determined that the costs and fees requested were reasonable and necessary. Stern presented no evidence on the issue to the trial court. He waived his right to contest it on appeal. *Saenz v. Murphy,* 162 Wis. 2d 54, 63, 469 N.W.2d 611, 615 (1991).

In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order or the attorney advising the party or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

There is no question but that the trial court found that Hamm failed to obey its orders regarding discovery. The court therefore was authorized to award fees against Stern as the attorney advising Hamm. The court made no finding that the failure was substantially justified or that other circumstances make an award of expenses unjust. On the contrary, as we have noted, the court twice described Stern as having played "fast and loose" with the discovery process.

Moreover, the law firm's motion for costs, rather than relying directly on sec. 804.12(2)(b), Stats., cited sec. 802.10(3)(d), Stats., and the latter brings the former into play.

Section 802.10(3)(d), Stats., provides that violation of a scheduling order is subject to sec. 805.03, Stats. Section 805.03 provides that the court may make such orders with regard to a failure "as are just, including but not limited to orders authorized under s. 804.12(2)(a)." Section 804.12(2)(a), Stats., does not expressly refer to attorney's fees, but we concluded in *Kenosha County v. Town of Paris,* 148 Wis. 2d 175, 186, 434 N.W.2d 801, 806 (Ct. App. 1988), that the same statute "allows a court to require a party *or its attorney* to pay reasonable expenses caused by the failure to comply." (Emphasis added.) We did not spell out our reasoning. We do so here.

██

Section 804.12(2)(b), Stats., provides that "[i]n lieu of" or "in addition" to the orders described in subsection (a), the court shall require the party or its attorney to pay reasonable expenses, including attorney fees. The words "in lieu of" and "in addition" authorize a court exercising its powers under sec. 804.12(2)(a), Stats., to utilize sec. 804.12(2)(b) to require the attorney advising a party to pay reasonable expenses, including attorney's fees.

Our reading is buttressed by *Schneller v. St. Mary's Hosp. Medical Ctr.*, 162 Wis. 2d 296, 307 n.2, 470 N.W.2d 873, 877 n.2 (1991). The *Schneller* court stated: "Section 805.03, Stats., provides that sanctions may be imposed 'as are just, including but not limited to orders authorized under s. 804.12(2)(a).' Section 804.12(2)(a) authorizes the circuit court to impose" sanctions including an assessment of expenses and attorney's fees.

We conclude that the trial court did not abuse its discretion. We therefore affirm.

*By the Court.*—Order affirmed.