PER CURIAM.
¶1 This appeal arises from the consolidation of two cases filed by Menard, one in 2016 and one in 2017, challenging the City of Marinette's ("the City") 2016 and 2017 real estate tax assessments of Menard's Marinette, Wisconsin store ("the Property").[1] Menard contends the circuit court erroneously exercised its discretion by: (1) applying the 2016 case's scheduling order to both cases after the court granted Menard's consolidation motion; and (2) denying Menard's motion to reconsider that decision. Further, Menard contends the court erred by granting the City summary judgment after concluding that an expert report is necessary to rebut the presumption that a city assessor's property valuation is correct.
¶2 We reject Menard's contentions, with one exception. Specifically, we agree with Menard that the circuit court erroneously exercised its discretion by failing to reconsider its decision to have the 2016 scheduling order govern the 2017 case after it came to light that, prior to consolidation, Menard had missed a critical deadline under the 2016 scheduling order. Accordingly, we affirm in part, reverse in part, and remand with directions in the 2017 case.
BACKGROUND
¶3 In 2016, the City assessed the value of the Property at $9,784,500. Menard filed an objection to this assessment with the City's board of review, contending that the Property's fair market value was $6,105,143. The board granted Menard's request for a waiver of a hearing, pursuant to WIS. STAT. § 70.47(8m) (2017-18).[2] Accordingly, Menard proceeded directly to the circuit court, filing the 2016 case on July 22, 2016.
¶4 On June 2, 2017, the parties participated in a scheduling conference and agreed upon certain deadlines to govern the 2016 case. The circuit court issued a scheduling order on June 26 that reflected those agreed-upon deadlines. As relevant to this appeal, the court's order explicitly provided that Menard "shall name all expert witnesses and provide any reports" by September 1, 2017.
¶5 One month after the circuit court issued its 2016 scheduling order, Menard filed the 2017 case, challenging the City's assessment of the Property for the 2017 tax year. Although the 2017 case challenged the City's tax assessment for a different year than the 2016 case, the underpinnings of the 2017 case-i.e., the City's assessment of the Property at $9,784,500 and Menard's contention that the Property's value was "no more than $6,105,143"-were identical to the underpinnings of the 2016 case.
¶6 On September 1, 2017, Menard timely disclosed its expert witnesses in the 2016 case. This list included Mike MaRous, an appraiser that Menard stated would "be called to testify to the appraisal, value and taxation aspects of the claim." However, contrary to the scheduling order, Menard did not file any reports with its expert disclosure; instead, it stated it "reserve[d] its right to file an appraisal report issued by Mr. MaRous."
¶7 The City responded to Menard's failure to submit a timely expert report in the 2016 case by moving for summary judgment. In support, the City argued that, pursuant to WIS. STAT. § 70.49, "the affidavit of the [City] assessor regarding the value of Menard's real property ... [is] presumptive evidence that the property has been justly and equitably assessed." Furthermore, the City argued that because Menard "failed to produce a contrary appraisal of the property," that presumption could not be rebutted and summary judgment was appropriate.
¶8 Approximately four weeks later-and prior to filing a response to the City's motion for summary judgment-Menard moved the circuit court to consolidate the 2016 and 2017 cases and to "modify [the 2016 case] scheduling order." As grounds, Menard stated that the "two cases involve common issues of law and fact" and "[c]onsolidation would be in the interests of judicial economy and would allow the parties to negotiate a global resolution of both the 2016 and 2017 property assessments." In addition, Menard requested that, should the court grant consolidation, "the [2016] scheduling order ... be vacated and a single scheduling order be issued to govern the consolidated proceedings." Nowhere in Menard's consolidation motion, however, did it reference the fact that it had already missed the deadline to submit an expert report under the 2016 scheduling order.
¶9 In November 2017, following a pretrial conference, the circuit court granted Menard's motion to consolidate. However, rather than issuing a new scheduling order, the court ordered that "those [consolidated] cases shall proceed under the previously issued [2016] scheduling order."
¶10 Menard then moved the circuit court to reconsider its denial of Menard's request for the issuance of a new scheduling order or, in the alternative, to allow Menard to withdraw its consolidation motion. Menard supported its motion by stating that its "ability to prosecute the 2017 case" would be prejudiced if the court allowed the consolidated cases to be governed by the 2016 scheduling order, as "deadlines have already passed under the existing scheduling order in the 2016 case."
¶11 On December 4, 2017-over three months after the deadline to submit expert reports under the 2016 scheduling order and while Menard's motion for reconsideration was still pending-Menard filed MaRous's appraisal of the Property in the circuit court. This appraisal estimated that the "retrospective market value" for the 2016 and 2017 tax years was $4,050,000.
¶12 Four days later, Menard responded to the City's motion for summary judgment in the 2016 case. Menard argued, in relevant part, that summary judgment was inappropriate because: (1) Menard's failure to timely submit an expert report was not egregious or in bad faith, and therefore the appraisal could be presented at trial; and (2) even without the appraisal, Menard could rebut the statutory presumption that the City's assessment was correct because the summary judgment record included evidence that "call[ed] into question the methodology of the City's assessor." Regarding this second argument, Menard specifically pointed to the fact that its "discovery responses included a link to a Dropbox file that included appraisals of other big box store locations in Wisconsin and Minnesota where the assessors' valuations were shown to be significantly higher than appraised value."
¶13 On January 26, 2018, the circuit court held a hearing on Menard's reconsideration motion and the City's summary judgment motion. The court first denied Menard's reconsideration motion, explaining:
Well, I guess my thoughts on when the Motion to Consolidate came in, I thought yes, that makes perfect sense. Let's consolidate 2016 and 2017. It's going to be the same evidence regardless. I guess I didn't realize that you had this issue with not having ordered an appraisal and I'll address that later on, but my thought was okay, great. We've got everything in place. There's no reason we can't tack on this additional year. The evidence is going to be identical. We've already got a scheduling order in place. I assumed that it was being followed and then I would just simply take care of everything at our trial date that we had scheduled.
....
So the problem here is that [Menard] didn't follow ... the Scheduling Order and that's what's caused the problem here. So no, I'm not going to reconsider the denial of the request to modify the Scheduling Order.
¶14 The circuit court proceeded to consider the City's motion for summary judgment, which, based upon its denial of Menard's motion for reconsideration, the court considered applicable to "both cases." The court ultimately concluded that: (1) MaRous's appraisal of the Property would not be admissible at trial because Menard's failure to timely submit the appraisal was "egregious"; and (2) consequently, Menard had introduced "no evidence" rebutting the presumption of correctness afforded to the City's assessment. Accordingly, the court issued an order granting the City summary judgment in both the 2016 and 2017 cases and it dismissed Menard's claims in their entirety. Menard now appeals.
STANDARDS OF REVIEW
¶15 We independently review a grant of summary judgment, using the same methodology as the circuit court. Central Corp. v. Research Prods. Corp. , 2004 WI 76, ¶18, 272 Wis. 2d 561, 681 N.W.2d 178. Summary judgment is appropriate where there is no genuine issue as to any material fact and the undisputed facts establish that the moving party is entitled to a judgment as a matter of law. WIS. STAT. § 802.08(2).
¶16 We review a circuit court's decision to control its docket through a scheduling order, and to impose sanctions for an untimely filing under that scheduling order, for an erroneous exercise of discretion. See Hefty v. Strickhouser , 2008 WI 96, ¶28, 312 Wis. 2d 530, 752 N.W.2d 820. Likewise, we also review a court's decision on a motion for reconsideration for an erroneous exercise of discretion. See Koepsell's Olde Popcorn Wagons, Inc. v. Koepsell's Festival Popcorn Wagons, Ltd. , 2004 WI App 129, ¶6, 275 Wis. 2d 397, 685 N.W.2d 853. We will sustain a discretionary decision as long as a court examined the relevant facts, applied a proper standard of law, and used a rational process to reach a reasonable conclusion. Hefty , 312 Wis. 2d 530, ¶28.
DISCUSSION
I. Motion to consolidate and modify scheduling order
¶17 On appeal, Menard first challenges the circuit court's decision to grant Menard's motion to consolidate the 2016 and 2017 cases, while at the same time denying Menard's request that the 2016 scheduling order be vacated and a new scheduling order be issued to govern the consolidated cases. Wisconsin circuit courts have inherent power to control their dockets. Parker v. Wisconsin Patients Comp. Fund , 2009 WI App 42, ¶9, 317 Wis. 2d 460, 767 N.W.2d 272. One means by which they may do so is by issuing a scheduling order. Id. A scheduling order is properly issued as long as the court consults with the parties before issuing it. Hefty , 312 Wis. 2d 530, ¶51.
¶18 Here, Menard advances various arguments as to why the circuit court's decision to allow the 2016 scheduling order to govern the consolidated cases was an erroneous exercise of discretion. We need not discuss these arguments in detail, however, because they all rest on the same faulty premise. That is, Menard seeks to blame the court for not giving sufficient consideration to the fact that "critical deadlines ... had passed" under the 2016 scheduling order and states that "[i]n essence, a failure to consult is what happened here."
¶19 Menard fails to come to grips with the fact that all the issues it argues resulted in the circuit court's claimed erroneous exercise of discretion were of Menard's own making. It was Menard that failed to timely submit an expert report by the deadline set forth in the 2016 scheduling order. It was Menard that moved to consolidate the 2017 case with the 2016 case after it missed that deadline. And it was Menard that failed to alert the court in its motion to consolidate of its own failure to abide, at least in part, to the 2016 scheduling order.
¶20 Based on Menard's actions, the circuit court unquestionably used a rational process to reach a reasonable conclusion in deciding that "[t]here's no reason we can't tack on this additional year. ... We've already got a scheduling order in place." This conclusion follows because it is undisputed that the 2016 scheduling order was entered by the court after consulting with Menard and the City, and, as the court correctly noted, the 2017 case involved the same parties, the same property, the same assessed values, and the same arguments as the 2016 case. Given those realities, the court had no reason to consult Menard before deciding to have the 2016 scheduling order remain in place because it made the reasonable assumption that Menard had abided by its original scheduling order. Therefore, we conclude the court did not erroneously exercise its discretion by initially deciding to have the 2016 scheduling order govern the consolidated proceedings.
II. Motion for Reconsideration
¶21 Menard next argues that the circuit court erroneously exercised its discretion by denying Menard's motion to reconsider because the court's original order "resulted from two manifest errors of law." Specifically, Menard argues the court made manifest errors of law by: (1) failing "to weigh and balance the competing interests at stake in deciding whether to modify the 2016 case scheduling order"; and (2) "completely ignor[ing] the injustice of binding the 2017 case to the 2016 case scheduling order." To prevail on a motion for reconsideration, the movant must present either newly discovered evidence or establish a manifest error of law or fact. Koepsell's Olde Popcorn Wagons , 275 Wis. 2d 397, ¶44.
¶22 Although we ultimately agree with Menard that the circuit court erroneously exercised its discretion by denying its motion for reconsideration as to the 2017 case, we pause briefly to properly frame the issue. As indicated, Menard focuses its argument on the court's application of the law regarding scheduling orders at the time the court originally consolidated the cases. As we have just explained, however, that decision was not an erroneous exercise of discretion based on the information known to the court at the time it issued its order.
¶23 Still, on reconsideration, the circuit court itself acknowledged that at the time it made its original decision it was unaware of a critical fact: Menard had already missed the deadline to submit expert reports under the 2016 scheduling order. In other words, the court's original order was based upon a manifest error of fact. Thus, our inquiry here is whether the court, once it became aware of Menard's deadline violation, applied the proper law to the facts as known when it decided the motion for reconsideration. Stated differently, the focus of our inquiry is whether the court properly applied the law regarding untimely motions to amend a scheduling order once it became aware that Menard's original "motion to consolidate and modify scheduling order" was, effectively, an untimely motion to amend the 2016 scheduling order.
¶24 When addressing an untimely motion to amend a scheduling order, a circuit court must weigh and balance the conflicting interests in permitting parties to fully present their case, in preventing prejudice to the opposing party, and in deterring litigants from flaunting court orders and interfering with the orderly administration of justice. Schneller v. St. Mary's Hosp. Med. Ctr. , 162 Wis. 2d 296, 310, 470 N.W.2d 873 (1991). The court's broad discretion in responding to such a motion ranges from granting the requested relief to dismissing the case as a sanction. Id. Dismissal is appropriate where the conduct of the moving party in failing to obey the court's original scheduling order is egregious and there is no clear and justifiable excuse for the conduct.[3] Id.
¶25 In the 2016 case, the circuit court expressly found that Menard's conduct in failing to timely submit the expert report in the 2016 case was "egregious." On that basis, the court denied Menard's motion for reconsideration and thereby excluded Menard's untimely expert report from trial.
¶26 The circuit court supported its finding that Menard's conduct was egregious by pointing to the fact that not only did Menard fail to submit an expert appraisal of the Property by the September 1, 2017 deadline, it failed to even order an appraisal until over a month later. On appeal, Menard does not argue that finding was clearly erroneous. Instead, it argues the court should have considered that there were "multiple [other] options" available to the court, such as adjourning the trial date or imposing financial sanctions on Menard. This argument ignores our standard of review, as the court's unchallenged finding that Menard's conduct in the 2016 case was egregious, standing alone, provides a sufficient basis for the court to properly exercise its discretion by excluding Menard's expert report. See id. at 317. Consequently, we must sustain the court's decision.
¶27 In the 2017 case, however, Menard does challenge the circuit court's finding that its conduct was egregious. In support, Menard points to the fact that no scheduling order had been issued in the 2017 case at the time the cases were consolidated. Therefore, Menard argues that it cannot have acted egregiously in failing to timely submit an expert report in the 2017 case because "no expert deadline ever was established."
¶28 We agree with Menard that it cannot have acted egregiously in the 2017 case by failing to timely submit an expert report under the 2016 scheduling order, because the cases were not consolidated until after that deadline passed. Accordingly, Menard did not miss any deadlines in the 2017 case, and a court's sanction that is premised upon an erroneous finding that a party violated a deadline constitutes an erroneous exercise of discretion. See Hefty , 312 Wis. 2d 530, ¶77. Thus, in accordance with Hefty , we remand the 2017 case for the court to consult with the parties prior to issuing a scheduling order that will govern that case going forward. See id. , ¶51.
III. Summary Judgment
¶29 Finally, Menard contends the circuit court erred in granting summary judgment in the 2016 case because, even assuming that its expert report was properly excluded, it could present sufficient evidence at trial to rebut the presumption that the City's assessment was correct.[4] When considering an excessive assessment claim, a circuit court must presume that a municipality's assessor has correctly assessed the subject property. Bonstores Realty One, LLC v. City of Wauwatosa , 2013 WI App 131, ¶5, 351 Wis. 2d 439, 839 N.W.2d 893 ; see also WIS. STAT. § 70.49(2). This presumption of correctness does not apply, however, if the taxpayer presents significant contrary evidence or shows the assessment does not apply the "principles in the Property Assessment Manual. " Bonstores Realty One , 351 Wis. 2d 439, ¶5 (citation omitted). As noted above, the court found that, based on the exclusion of Menard's untimely expert report, Menard could not overcome this presumption of correctness. Therefore, the court granted the City summary judgment.
¶30 On appeal, Menard advances that it presented significant contrary evidence sufficient to rebut the presumption of correctness at the summary judgment stage by: (1) naming MaRous as an expert witness; and (2) submitting "appraisals of other big box store locations in Wisconsin and Minnesota where the assessors' valuations were shown to be significantly higher than appraised value." We address and reject each argument in turn.
¶31 First, Menard's argument that summary judgment was improper because "MaRous was named as an expert" disregards the burden Menard bore, as the party challenging a tax assessment, to rebut the presumption of correctness. See Regency W. Apartments LLC v. City of Racine , 2016 WI 99, ¶72, 372 Wis. 2d 282, 888 N.W.2d 611. In order to defeat summary judgment, Menard had the burden of putting forward facts, which assumed to be true, would rebut that presumption. See Phillips v. Behnke , 192 Wis. 2d 552, 531 N.W.2d 619 (Ct. App. 1995). Merely naming an expert, without any accompanying affidavits, reports, or factual allegations whatsoever to contradict the City's assessment, was therefore insufficient to overcome the presumption of correctness.
¶32 Second, as the circuit court aptly stated, Menard's submission of "appraisals of dozens of [Menard's] stores in Wisconsin and Minnesota ... does not say anything about how the Marinette assessor reached its valuation." As such, we conclude the court did not err by determining that those appraisals did not constitute significant contrary evidence that could rebut the presumption of correctness afforded the City's assessment.
¶33 To explain, without an appraisal of the Property itself-or, at the very least, a submission from an expert linking the valuation method used in the outside appraisals to the (allegedly improper) valuation method used by the City's assessor-any conclusion that the City's assessment was incorrect would be pure speculation. Speculation falls far short of the "significant contrary evidence" standard that Menard had to satisfy to survive summary judgment on its claim. See Helland v. Kurtis A. Froedtert Mem'l Luth. Hosp. , 229 Wis. 2d 751, 756, 601 N.W.2d 318 (Ct. App. 1999).
CONCLUSION
¶34 For the reasons set forth above, we conclude that the circuit court did not err by initially consolidating the 2016 and 2017 cases and ordering that they both be governed by the 2016 scheduling order. Moreover, the court did not erroneously exercise its discretion by denying Menard's untimely motion to modify the scheduling order in the 2016 case. And, based upon the court's proper exclusion of the untimely expert report in 2016 case, the court did not err in granting the City summary judgment in that case.
¶35 However, we conclude that the circuit court's decision on reconsideration to bind the 2017 case to the 2016 scheduling order-after learning a critical deadline had already been missed under that scheduling order-constituted an erroneous exercise of discretion. Therefore, we reverse the grant of summary judgment in the 2017 case and remand for the court to issue a scheduling order that will govern that case going forward.
¶36 No WIS. STAT. RULE 809.25(1) costs are awarded to either party.
By the Court. -Judgment affirmed in part; reversed in part and cause remanded with directions.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

Menard challenged the 2016 real estate tax assessment in Marinette County case No. 2016CV173 and the 2017 real estate tax assessment in Marinette County case No. 2017CV163. For the remainder of this opinion we will refer to these cases, respectively, as the 2016 case and the 2017 case.

All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

As discussed further below, the circuit court's decision to deny Menard's motion to reconsider in the 2016 case served as an effective dismissal of that case. See Schneller v. St. Mary's Hosp. Med. Ctr. , 162 Wis. 2d 296, 311, 470 N.W.2d 873 (1991).

Our discussion of the circuit court's grant of summary judgment is confined to the 2016 case, as we already have indicated that Menard is entitled to have a new scheduling order issued in the 2017 case. Under that new scheduling order, Menard will have the opportunity to timely submit an expert report that may overcome the presumption that the City's assessment is correct. See Bonstores Realty One, LLC v. City of Wauwatosa , 2013 WI App 131, ¶5, 351 Wis. 2d 439, 839 N.W.2d 893.