# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2011AP825 & 2011AP826 |
| COMPLETE TITLE: | |

In re the termination of parental rights to
Isaiah H., a person under the age of 18:

Dane County Department of Human Services,
      Petitioner-Respondent,
   v.
Mable K.,
      Respondent-Appellant-Petitioner,
Lee H.,
      Respondent.

In re the termination of parental rights to May
K., a person under the age of 18:

Dane County Department of Human Services,
      Petitioner-Respondent,
   v.
Mable K.,
      Respondent-Appellant-Petitioner,
Wesley J.,
      Respondent.

REVIEW OF A DECISION OF THE COURT OF APPEALS
(No Cite)

| | |
|---|---|
| OPINION FILED: | March 29, 2013 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | September 7, 2012 |

| | | |
|---|---|---|
| SOURCE OF APPEAL: | | |
| | COURT: | Circuit |
| | COUNTY: | Dane |
| | JUDGE: | Amy R. Smith |

| | |
|---|---|
| JUSTICES: | |
|   CONCURRED: | |
|   DISSENTED: | Ziegler, Roggensack, Gableman, JJJ., dissent. (Opinion filed.) |
|   NOT PARTICIPATING: | |

ATTORNEYS:

    For the respondent-appellant-petitioner, there were briefs filed by *Brian C. Findley*, Darlington, and oral argument by *Brian C. Findley*.

For the petitioner-respondent, there was a brief filed by *Gary Rehfeldt,* assistant Dane County corporation counsel, and oral argument by *Gary Rehfeldt.*

A guardian ad litem brief was filed by *Ginger L. Murray* and *Lawton & Cates, S.C.,* Madison*.*

**2013 WI 28**

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No.   2011AP825 & 2011AP826
(L.C. No.   2010TP32 & 2010TP33)

STATE OF WISCONSIN          :          IN SUPREME COURT

In re the termination of parental rights to Isaiah H., a person under the age of 18:

Dane County Department of Human Services,

      Petitioner-Respondent,

   v.

Mable K.,

      Respondent-Appellant-Petitioner,

Lee H.,

      Respondent.

**FILED**

**MAR 29, 2013**

Diane M. Fremgen
Clerk of Supreme Court

In re the termination of parental rights to May K., a person under the age of 18:

Dane County Department of Human Services,

      Petitioner-Respondent,

   v.

Mable K.,

      Respondent-Appellant-Petitioner,

**Wesley J.,**

        **Respondent.**

---

REVIEW of a decision of the Court of Appeals. *Reversed and cause remanded.*

¶1 ANN WALSH BRADLEY, J. The petitioner, Mable K., seeks review of an order of the court of appeals dismissing her appeals in two consolidated termination of parental rights proceedings.[1] She contends that the circuit court erroneously exercised its discretion when it granted a default judgment finding that grounds existed to terminate her parental rights, after barring her attorney from offering further evidence tending to refute the grounds for the termination. Additionally, she argues that the circuit court erred when it granted the default judgment prematurely.

¶2 Mable K. further argues that the remedy provided by the circuit court to address its errors is fundamentally unfair. The circuit court's remedy was to return Mable K. to the procedural posture when the error occurred and conduct the

---

[1] <u>Dane Cnty. Dep't of Human Servs. v. Mable K.</u>, Case Nos. 2011AP825, 2011AP826, unpublished slip op. (Wis. Ct. App., Jan. 11, 2012), dismissing Mable K.'s appeals after an order of the circuit court for Dane County, Amy Smith, J. presiding, vacated its previous order terminating her parental rights.

remainder of the fact-finding hearing before the circuit court, not before a jury.

¶3 We conclude, and the circuit court has acknowledged, that it erroneously exercised its discretion when it entered a default judgment finding that grounds existed to terminate Mable K.'s parental rights after barring her attorney from offering additional evidence. It also erred when it granted the default judgment before taking evidence sufficient to establish the grounds alleged in the amended petitions. We further conclude that the circuit court's remedy for correcting the errors is fundamentally unfair under the facts of this case.

¶4 Accordingly, we reverse and remand to the circuit court for a new fact-finding hearing to be heard by a jury if Mable K. timely demands one. On remand, the new fact-finding hearing is to be held at the earliest reasonable opportunity.

I

¶5 Dane County filed amended petitions for the termination of Mable K.'s parental rights of her children, Isaiah H. and May K. Dane County also sought to terminate the parental rights of the fathers of the children in the amended petitions. The amended petitions allege as grounds for termination of Mable K.'s parental rights a continuing need of protection or services under Wis. Stat. § 48.415(2) (2009-10)[2] and abandonment under Wis. Stat. § 48.415(1).

---

[2] All subsequent references to the Wisconsin Statutes are to the 2009-10 version unless otherwise indicated.

3

¶6 Before the fact-finding hearing, the circuit court ordered Mable K. to appear in person at all proceedings.[3] She was represented by an attorney, Yolanda Lehner, at the fact-finding hearing which was being tried by a jury. On September 14, 2010, the second day of the fact-finding hearing, Mable K. failed to personally appear at 9:00 a.m. when the hearing was set to resume.[4] However, Attorney Lehner was present and appeared on her behalf.

¶7 When Mable K. failed to personally appear at the appointed time, the circuit court asked Attorney Lehner about Mable K.'s absence. Attorney Lehner stated that Mable K. had called as Attorney Lehner was arriving at the courthouse that morning. Mable K. told Attorney Lehner that she "wasn't feeling good" and that the hearing was extremely stressful. She also told Attorney Lehner that she didn't think she could come to court.

---

[3] Termination of parental rights proceedings involve a two-step procedure. State v. Shirley E., 2006 WI 129, ¶26, 298 Wis. 2d 1, 724 N.W.2d 623. The first step is the fact-finding phase, which consists of an evidentiary hearing to determine whether adequate grounds exist for the termination of parental rights. Wis. Stat. § 48.424; Shirley E., 298 Wis. 2d 1, ¶27. The second step is the dispositional phase, which consists of an evidentiary hearing in which the circuit court determines whether termination of parental rights is in the child's best interests. See Wis. Stat. § 48.427; Shirley E., 298 Wis. 2d 1, ¶28.

[4] Mable K. was present for the first day of the fact-finding hearing. Additionally, there were eight pre-trial proceedings held by the circuit court prior to the fact-finding hearing and there is no indication that Mable K. failed to appear on time for any of those proceedings.

¶8 Dane County moved for a default judgment. Attorney Lehner requested another opportunity to speak with Mable K. about coming to court. Instead of granting a default judgment at that time, the circuit court recessed for five minutes in order to allow Attorney Lehner an opportunity to again contact Mable K.

¶9 When Attorney Lehner returned to court, she explained that she had spoken with Mable K. via telephone. Mable K. told Attorney Lehner that she was going to ride her bicycle to court and that she would be there in "about half an hour."

¶10 Attorney Lehner asked the circuit court to wait until "10 to 10," or 9:50 a.m., to see if Mable K. arrived. The circuit court agreed and took Dane County's motion under advisement to see whether Mable K. arrived in court later in the day. The hearing before the jury resumed, and testimony was presented addressing the petitions against the fathers.

¶11 At approximately 10:20 a.m., outside the presence of the jury, the circuit court again took up the matter of Mable K. being absent from court. Dane County renewed its motion for a default judgment. However, the attorney for Dane County noted that more evidence would be required to support the abandonment ground regarding both children before a default judgment could be entered. He expected a witness who could testify about that issue to arrive at 10:30 a.m. The circuit court acknowledged that it needed to hear additional testimony from Dane County's witness to establish the ground of abandonment before granting

5

the motion for a default judgment finding that grounds existed to terminate Mable K.'s parental rights.[5]

¶12 In opposition to the renewed motion, Attorney Lehner argued that on the abandonment issue, she had "a lot of evidence."  The evidence was, in Attorney Lehner's estimation, enough to make it "difficult for the County to prove abandonment."

¶13 Attorney Lehner asked whether she would be allowed to adduce that evidence, but the circuit court determined that she would not be allowed to do so.  Instead she would be allowed only to cross-examine Dane County's sole witness in response to the direct evidence introduced by Dane County.  The circuit court then heard testimony from the witness and Attorney Lehner cross-examined him.

¶14 Following the testimony from Dane County's witness, the circuit court "found by default" both grounds for termination.  After making that determination, the circuit court found Mable K. unfit.  There was no reference at the hearing to Wis. Stat. § 805.03, a statute that allows the circuit court to enter a sanction for the violation of a court order.  In fact,

---

[5] This court determined in Evelyn C.R. v. Tykila S., 2001 WI 110, ¶¶16-19, 246 Wis. 2d 1, 629 N.W.2d 768, that a circuit court must first take evidence sufficient to support a finding by clear and convincing evidence that the ground or grounds alleged in the petition were proven before granting a default judgment on the grounds at issue.  The circuit court did not reference Evelyn C.R. directly, but in acknowledging that it needed to hear additional testimony, it appears to have been aware of that requirement.

the words "sanction" or "forfeiture" were not employed as part of the analysis (for further discussion, see infra ¶¶67-71).

¶15 Mable K. arrived in court approximately ten minutes later at 10:45 a.m.  Outside the presence of the jury Attorney Lehner requested that the circuit court reconsider its previous entry of a default judgment finding that grounds existed to terminate Mable K.'s parental rights.  The circuit court invited Mable K. to testify about why the circuit court should reconsider the default judgment.

¶16 Mable K. testified that she was "real kind of sick" from the previous day's "procedure."  The proceedings from the previous day "really kind of hurt" her and she testified that she arrived late because "[she] was just tired."  On cross-examination, Dane County introduced deposition testimony regarding inconsistent statements made by Mable K. about her marital status in previous termination proceedings.  On further questioning from the circuit court, Mable K. testified that after the second phone call, she said she "had to get me some breakfast then I will be coming."

¶17 After Mable K. finished testifying, the circuit court considered whether it should vacate the default judgment.  The circuit court questioned Mable K.'s credibility, citing the inconsistent statements Mable K. had made in prior depositions that were introduced during cross-examination by Dane County. The circuit court also discussed the morning's events and Mable K.'s testimony, where Mable K. had offered several "inconsistent" reasons for not appearing in person.

7

Accordingly, the circuit court determined that Mable K. had introduced insufficient proof to support a finding that the default judgment should be vacated under Wis. Stat. § 806.07(1)(a), which allows relief from a judgment on grounds of mistake or excusable neglect.[6]

¶18 The circuit court then dismissed Mable K. and Attorney Lehner from the remainder of the fact-finding hearing. When the jury was brought back into court, it was instructed that Mable K. was no longer involved in the cases and that the claims against her had been resolved. The hearing before the jury continued, addressing the petitions against the fathers.

---

[6] The record from the hearing on the motion to vacate the default judgment reflects that the motion was advanced and decided pursuant to Wis. Stat. § 806.07(1)(a). The record reflects the following:

> I infer from the information that [Mable K.] has provided and the comments made by Ms. Lehner that we are, that [Mable K.] is seeking the Court to vacate the default judgment based on mistake or excusable neglect or something of that nature. . . .

> I also would note that I do not believe that the testimony of [Mable K.], even taken in the light most favorable to [her], could possibly constitute excusable neglect. [Mable K.] has indicated that for -- on the record as to a number of different possible excuses for her failure to appear here today. I do not believe that any of them constitute mistake or excusable neglect as those terms are defined in Section 806.07(1)(a). . . .

> I also will find that the information that I have is insufficient to make a finding that judgment or order of default should be relieved under 806.07 and I, therefore, deny the motion to relieve [Mable K.] from default judgment. I've ruled in that regard.

¶19 Before the dispositional hearing, Joyce Brown, a social worker with the Dane County Department of Human Services, filed a court report that recommended terminating Mable K.'s parental rights.  According to the psychiatric evaluations referenced in that court report, Mable K. has "intellectual deficits" with a performance IQ of 60, and a full scale IQ of 54.  The court report indicates that an IQ of 54 is "considered in the extremely low range."

¶20 The circuit court held a dispositional hearing on January 3, 2011.  Mable K. personally appeared along with Attorney Lehner.  The circuit court heard testimony from Joyce Brown regarding the best interests of the children.  At the conclusion of the dispositional hearing, the circuit court entered an order terminating Mable K.'s parental rights.

¶21 Mable K. appealed following the dispositional hearing. Retaining jurisdiction, the court of appeals remanded the cases back to the circuit court and ordered the circuit court to hear and decide postdisposition motions.

¶22 At a postdisposition motion hearing on remand, Mable K. argued that the circuit court erroneously exercised its discretion by granting and refusing to vacate the default judgment finding that grounds existed to terminate her parental rights.  She contended that the appropriate remedy for the erroneous exercise of discretion was a new fact-finding hearing.

¶23 Attorney Lehner offered testimony about the evidence she had intended to introduce at the fact-finding hearing.  She testified that she did not think that Dane County could prove

9

the abandonment ground. The amended petitions relating to both children alleged that Mable K. failed to visit or communicate with the children during a five-month period between December 17, 2009 and May 27, 2010. The amended petitions further alleged that there were two e-mail communications from Mable K. to the children's foster parent, but that both e-mail communications occurred more than three months after Mable K.'s last visit with the children on December 17, 2009.

¶24 To rebut the abandonment ground, Attorney Lehner intended to introduce e-mail correspondence and records of contacts between Mable K., the social workers involved in her case, and the children's foster parent. Contrary to the allegations in the amended petitions, these contacts suggest that Mable K. contacted the children's foster parent and social workers on a number of occasions during the period of the alleged abandonment.

¶25 The e-mail communications that Mable K. sent directly to the children's foster parent during the period of alleged abandonment were not two in number as stated in the amended petitions, but rather there were seven. Also contrary to the allegations of the amended petitions, the record indicates that there were e-mails sent during——not after——the three-month period following Mable K.'s last visit with the children. The e-mails which Attorney Lehner intended to introduce were sent on January 21, 2010, March 1, 2010, March 31, 2010, April 22, 2010, April 29, 2010, May 5, 2010, and May 13, 2010. In those e-mail communications, Mable K. asked on several occasions about the

10

children's lives, their experiences in school, how big the children were getting, and whether the foster parent could share any pictures of the children.

¶26 To further rebut the abandonment ground, Attorney Lehner intended to introduce e-mail correspondence and records of contacts between Mable K. and social workers involved in her case during the alleged period of abandonment. One such record notes that Mable K. left a voice message with a social worker on January 7, 2010, cancelling a contact scheduled for that date. Mable K. sent an e-mail to the same social worker on March 1, 2010 saying she no longer had a telephone and apologizing for her lack of response. Another record from March 10, 2010 notes that Mable K. called a social worker and asked whether she could "see her kids," but there is no indication such a visit occurred. An additional e-mail from a social worker sent on March 16, 2010 indicates that the social worker spoke on the telephone with Mable K. the previous day and that Mable K. said she "expect[ed] to get the kids back as she will have housing on the South side next month."

¶27 Attorney Lehner stated she intended to introduce the evidence to rebut the abandonment ground through cross-examination of "the social workers" or through Mable K.'s testimony directly. Nearly all of the e-mails were either directed to or copied to the social worker, Joyce Brown. Attorney Lehner had previously listed Joyce Brown on her amended witness list before the fact-finding hearing.

11

¶28 Attorney Lehner further testified that she had intended to introduce evidence contesting the continuing need of protection or services ground.  She thought that she could "make a case that [Mable K.] would meet the conditions [of the child in need of protection or services order] in the next nine months."  Attorney Lehner testified that Mable K. "had an apartment lined up" and that the apartment evidence would make it likely that Mable K. would meet the conditions.  In Attorney Lehner's opinion, the fact that Mable K. did not have a place to live "seemed to be the mainstay with getting her kids back."

¶29 Attorney Lehner thought that she had an additional defense to this ground, that is a "strong argument that the Department had not made reasonable efforts."  She had intended to develop the argument that "it was almost set up so that [Mable K.] would fail...to meet the conditions she needed for return" by cross-examining Joyce Brown.  Additionally, Attorney Lehner intended for Mable K. to testify regarding both of the anticipated defenses to the continuing need of protection or services ground.

¶30 In a later oral decision following the post-disposition motion hearing, the circuit court determined that it erroneously deprived Mable K. of her statutory right to an attorney provided under Wis. Stat. § 48.23(2).  Citing State v. Shirley E., 2006 WI 129, 298 Wis. 2d 1, 724 N.W.2d 623, the circuit court acknowledged that it had erred when it barred Attorney Lehner from adducing evidence tending to refute the grounds alleged in the amended petitions.  Dane County argued

12

that there were no witnesses to present when Mable K. was late on the second day of the fact-finding hearing, but the circuit court rejected that argument.[7] It concluded that Attorney Lehner "had evidence beyond [Mable K.]" and had "other witnesses on her witnesses list," stating:

> I really think that [Mable K.] should have had that opportunity to bring in these witnesses and, frankly, I don't know exactly what they would say but she had a right to at least present it.

Accordingly, the circuit court vacated its previous orders terminating Mable K.'s parental rights.

¶31 The circuit court determined that the appropriate remedy for the erroneous exercise of discretion was to return Mable K. to the procedural posture when the error occurred. That procedural posture was after Dane County had moved for a default judgment and its abandonment witness had testified outside the presence of the jury, but before the circuit court actually found by default that grounds existed to terminate Mable K.'s

---

[7] The dissent makes the same argument that there were no witnesses to present but ignores that the circuit court soundly rejected that argument. Dissent, ¶110 n.11.

Additionally, Attorney Lehner acknowledged that although she could not call Mable K. if Mable K. was not present for the second day of the fact-finding hearing, she "wouldn't have put [her] case on probably until the next day anyway." Contrary to the arguments of the dissent, the record indicates that not only were there witnesses to present, but that the parties had already scheduled them to testify.

13

parental rights and found Mable K. unfit.[8] Under the circuit court's remedy, any additional evidence Mable K. could offer would be to the court, not to a jury.

¶32 The cases returned to the court of appeals after the postdisposition motion hearing. While the cases were pending before the court of appeals, Dane County filed a motion for reconsideration with the circuit court concerning its findings at the postdisposition motion hearing.

¶33 The circuit court issued a written "response" to the motion for reconsideration, indicating that it would be inclined to amend portions of its oral decision on remand if the court of appeals allowed it to do so. However, the circuit court concluded that it lacked the authority to act while the cases were pending before the court of appeals.

¶34 After the circuit court issued its written "response," the court of appeals issued an order remanding the cases to the circuit court in order to address Dane County's motion. The court of appeals reasoned that there was little point in reviewing a circuit court order that the circuit court itself no longer believed was the correct outcome.

---

[8] This case presents legal questions for our determination. In an apparent attempt to obfuscate the legal issues, much of the dissent's "family background" discussion seemingly is designed to malign Mable K.'s fitness as a parent——which is not an issue before us. The dissent seems to be advancing that we should somehow evaluate the law differently because of Mable K.'s family background.

14

¶35 On remand to address Dane County's reconsideration motion, the circuit court reaffirmed its earlier oral findings in a written decision. The circuit court concluded that the order terminating Mable K.'s parental rights would remain vacated, "with the expectation that this court will decide at an evidentiary hearing whether grounds exist to establish termination of [Mable K.'s] parental rights," at which time Mable K. could present evidence "contrary to default."

¶36 Following the circuit court's written decision, the cases returned to the court of appeals. In an order issued on December 21, 2011, the court of appeals *sua sponte* questioned what to do with the appeals, tentatively concluding that no appeal existed as of right and that it would not be inclined to take up the appeals on a discretionary basis. However, the court of appeals invited additional briefing on the matter.

¶37 After additional briefing, the court of appeals issued an order on January 11, 2012 dismissing the appeals. The court of appeals relied on the analysis contained in its December 21, 2011 order.

II

¶38 In these cases, we are called upon to examine whether the circuit court erroneously exercised its discretion in

15

entering a default judgment against Mable K.[9]  We are asked to first determine whether it was an erroneous exercise of discretion to grant a default judgment finding that grounds existed to terminate Mable K.'s parental rights after the circuit court barred Attorney Lehner from adducing evidence tending to refute the allegations in the amended petitions.  We are further called to determine whether the circuit court erroneously exercised its discretion in granting the default judgment before establishing the grounds alleged in the amended petitions.

¶39 A circuit court properly exercises its discretion when it examines the relevant facts, applies a proper standard of law, and using a demonstrated rational process reaches a conclusion that a reasonable judge could reach.  Schneller v.

---

[9] Mable K. additionally argues that the circuit court erroneously exercised its discretion in granting a default judgment because her conduct was not egregious or in bad faith and because Wis. Stat. § 806.07(1)(h), which allows relief from a judgment for "[a]ny other reasons justifying relief from the operation of the judgment," required the circuit court to vacate the default judgment.  Because we conclude that entering a default judgment was an erroneous exercise of discretion on other grounds, we need not address whether granting a default judgment was an erroneous exercise of discretion for those reasons.

In accepting the petition for review, we ordered the parties to brief the issue of whether the circuit court's decision to vacate its previous order terminating Mable K.'s parental rights constitutes a final order for the purposes of appeal.  However, we likewise need not decide that issue.  Having accepted the petition for review, determining the exact implications of the circuit court's actions on the status of these appeals is not necessary to the resolution of this case.

St. Mary's Hosp. Med. Ctr., 162 Wis. 2d 296, 306, 470 N.W.2d 873 (1991). Ultimately our determination rests here on an examination of whether the circuit court applied proper standards of law when it granted the default judgment. We review questions of law independent of the determinations rendered by the circuit court and the court of appeals.

¶40 If we determine that the circuit court erroneously exercised its discretion in granting a default judgment finding that grounds existed to terminate Mable K.'s parental rights, we must then examine whether the circuit court's remedy is fundamentally fair under these facts. See Sheboygan Cnty. Dep't of Health & Human Servs. v. Julie A.B., 2002 WI 95, ¶22, 255 Wis. 2d 170, 648 N.W.2d 402. Whether a circuit court has provided a parent in a termination of parental rights proceeding fundamentally fair procedures also presents a question of law that we review independent of the determinations of the circuit court and court of appeals. See Monroe Cnty. Dep't of Human Servs. v. Kelli B., 2004 WI 48, ¶¶16, 27, 271 Wis. 2d 51, 678 N.W.2d 831.

¶41 We address each issue in turn.

### III

¶42 We first consider whether the circuit court erroneously exercised its discretion when it entered a default judgment finding that grounds existed to terminate Mable K.'s parental rights. Specifically, Mable K. contends that the circuit court erroneously exercised its discretion in granting the default judgment after it deprived her of her statutory

17

right to an attorney under Wis. Stat. § 48.23(2).[10] She further contends that the circuit court erroneously exercised its discretion when it granted the default judgment before taking evidence sufficient to establish the grounds alleged in the amended petitions.

¶43 The circuit court acknowledged that it erred when it barred Mable K. from presenting further evidence. Citing Shirley E., the circuit court determined that Attorney Lehner should have been allowed to present evidence tending to refute the allegations in the amended petitions to terminate Mable K.'s parental rights. Likewise, Dane County agreed at oral argument before this court that the circuit court committed error in not allowing Attorney Lehner to adduce additional evidence. We begin our analysis by examining Shirley E.

---

[10] Wisconsin Stat. § 48.23(2) provides the following:

**(2)** Whenever a child is the subject of a proceeding involving a contested adoption or the involuntary termination of parental rights, any parent under 18 years of age who appears before the court shall be represented by counsel; but no such parent may waive counsel. Except as provided in sub. (2g), a minor parent petitioning for the voluntary termination of parental rights shall be represented by a guardian ad litem. If a proceeding involves a contested adoption or the involuntary termination of parental rights, any parent 18 years old or older who appears before the court shall be represented by counsel; but the parent may waive counsel provided the court is satisfied such waiver is knowingly and voluntarily made.

18

¶44 The Shirley E. court addressed the question of whether a circuit court may deny a parent the statutory right to an attorney when the parent appeared in the proceeding but failed to personally attend the hearing in contravention of a court order. 298 Wis. 2d 1, ¶2. Shirley E., a parent, failed to personally attend an initial plea hearing in a termination of parental rights proceeding. Id., ¶11. The circuit court rescheduled the hearing so the State could obtain service on Shirley E. and arrange for the appointment of an attorney. Id.

¶45 At the rescheduled hearing, Shirley E.'s recently-appointed attorney appeared in person, but Shirley E. did not. Id., ¶12. The circuit court allowed Shirley E. to appear by telephone at her attorney's request. Id. The State asked the circuit court to enter a default judgment against Shirley E., but the circuit court instead ordered Shirley E. to appear in person at the next hearing and warned her that if she did not appear personally, the circuit court would enter a default judgment against her. Id. The hearing was adjourned and rescheduled again. Id.

¶46 Shirley E. failed to personally appear at the rescheduled hearing. Id., ¶13. The circuit court entered a default judgment as a sanction for her failure to obey the court order that Shirley E. appear in person. Id. However, the circuit court indicated that it would entertain a motion to vacate the default judgment if Shirley E. appeared in person, and again adjourned the matter. Id., ¶15.

19

¶47 When Shirley E. failed to appear personally at the next hearing, the circuit court dismissed her attorney from the proceeding. Id., ¶16. The circuit court proceeded to hold hearings in both phases of the proceeding without Shirley E. or her attorney present and terminated Shirley E.'s parental rights. Id., ¶18.

¶48 Parents have a statutory right to representation by an attorney under Wis. Stat. § 48.23(2). The Shirley E. court concluded that the statutory right to an attorney is not limited to parents who appear in person at court proceedings. 298 Wis. 2d 1, ¶43. A parent's attorney may act on behalf of a parent who does not appear in person. Id., ¶46.

¶49 The Shirley E. court further concluded that a parent's statutory right to an attorney is preserved even after the entry of a default judgment. Id., ¶56. Parents in termination of parental rights proceedings have a statutory right to be heard through an attorney in "a meaningful time and in a meaningful manner."[11] Id., ¶52.

---

[11] The dissent appears to conclude that a parent cannot be denied her statutory right to an attorney unless the court bars the parent from participating "before any evidence [is] presented" and remains barred throughout an entire trial. Dissent, ¶127. It seems to ignore entirely the actual reasoning of this opinion and that of the circuit court, which is that the circuit court erroneously cut off Attorney Lehner before she could put in her case.

The dissent's analysis would unreasonably expand the holding of Shirley E. by implying that a parent's participation is meaningful except when the parent is entirely barred from participating at trial. See id.

¶50  Accordingly, Mable K.'s statutory right to an attorney did not expire when she did not arrive in court on time. Attorney Lehner could act on her behalf at the fact-finding hearing whether or not Mable K. personally appeared.

¶51  We agree with the parties and the circuit court that the circuit court erroneously exercised its discretion when it entered a default judgment against Mable K. finding that grounds existed to terminate her parental rights after depriving her of her statutory right to an attorney under Wis. Stat. § 48.23(2). In these cases, Attorney Lehner requested an opportunity to be heard and told the circuit court that she possessed "a lot of evidence" on the issue of abandonment, which she thought would make it "difficult for [Dane County] to prove abandonment" if she were allowed to enter it into the record.  She later testified that she had intended to introduce additional evidence tending to refute the allegations of continuing need of protection or services.  However, the circuit court refused to allow Attorney Lehner any opportunity to adduce that evidence.[12]

---

[12] Dane County cites to an unpublished court of appeals opinion, State v. Laura M., Nos. 2011AP2825, 2011AP2828, 2011AP2826, 2011AP2827, unpublished slip op. (Ct. App. March 27, 2012), in support of the argument that because Mable K. was not present to testify, Attorney Lehner could not adduce any other evidence.  However, Dane County ignores that in Laura M., the circuit court specifically asked whether the parent's attorney wished to call any witnesses and the attorney declined the opportunity.  Id., ¶42.  In these cases, Attorney Lehner was never asked if she had any other evidence, and when she asked for an opportunity to present additional evidence, the circuit court denied her request.

21

¶52 We turn next to address whether the circuit court erroneously exercised its discretion in entering the default judgment finding that grounds existed to terminate Mable K.'s parental rights before taking evidence sufficient to establish the grounds alleged in the amended petitions.  We look to Evelyn C.R. v. Tykila S., 2001 WI 110, 246 Wis. 2d 1, 629 N.W.2d 768 for guidance.

¶53 In Evelyn C.R., a child's biological mother failed to appear in person at a fact-finding hearing.  246 Wis. 2d 1, ¶8. Because the issue was to be tried before a jury, the circuit court expressed apprehension about holding the hearing without the mother's physical presence.  Id.  The parties rescheduled the fact-finding hearing for a later date.  Id.

¶54 There is no indication that the fact-finding hearing before a jury ever commenced.  Instead, when the mother failed to appear in person a second time, the petitioner moved for a default judgment at the rescheduled hearing.  Id., ¶9.  The circuit court granted the petitioner's motion, found the mother unfit based on the allegations in the petition, and scheduled the case for a dispositional hearing.  Id.

¶55 The Evelyn C.R. court concluded that circuit courts have a duty at the fact-finding hearing to find, by clear and convincing evidence, that all of the elements of the allegations in the petition have been met before granting a default judgment against a parent.  Id., ¶24.  The duty to establish grounds is "independent" of the circuit court's authority to grant a default judgment.  Id., ¶¶25-26.

22

¶56 In refusing to hear Attorney Lehner's additional evidence before entering a default judgment finding that grounds existed to terminate Mable K.'s parental rights, the circuit court put the cart before the horse. The circuit court could not make a decision based on clear and convincing evidence having heard only one side's version of the facts when the other side was requesting an opportunity to offer evidence that could defeat the allegations in the amended petitions. See Evelyn C.R., 246 Wis. 2d 1, ¶26.

¶57 Accordingly, we also conclude that the circuit court erroneously exercised its discretion when it entered the default judgment finding that grounds existed to terminate Mable K.'s parental rights before establishing the grounds alleged in the amended petitions by clear and convincing evidence.

IV

¶58 We turn now to examine the remedy for the errors. The circuit court concluded that the appropriate remedy would be to return Mable K. procedurally to the time of the error. The circuit court's remedy would place Mable K. after the testimony from Dane County's abandonment witness had been taken outside the presence of the jury, just before the circuit court entered the default judgment finding that grounds existed to terminate Mable K.'s parental rights. The circuit court further determined that Mable K. would be permitted to adduce additional evidence, but before the circuit court, not before a jury.

¶59 Terminating parental rights works a "unique kind of deprivation." M.L.B. v. S.L.J., 519 U.S. 102, 118 (1996). A

23

parent's interest in the "accuracy and justice of the decision . . . is . . . a commanding one." <u>M.L.B.</u>, 519 U.S. at 118 (quoting <u>Lassiter v. Dep't of Soc. Servs. of Durham Cnty.</u>, 452 U.S. 18, 27 (1981)). Although "the best interests of the child" standard set forth in Wis. Stat. § 48.01(1) is a matter of paramount consideration in a termination proceeding, it does not dominate every stage of the proceeding. The statutes carefully balance the interests of all participants including those of the parents. Wis. Stat. § 48.01(1). The "best interests of the child" standard does not dominate until the parent has been found unfit. As this court stated in <u>Julie A.B.</u>:

> Wisconsin Stat. § 48.01(1) provides in part: "In construing this chapter, the best interests of the child...shall always be of paramount consideration." (citations omitted.)

> Notwithstanding this broad language, the "best interests of the child" standard does not dominate every step of every proceeding, because other vital interests must be accommodated. When the government seeks to terminate parental rights, the best interests of the child standard does not "prevail" until the affected parent has been found unfit pursuant to Wis. Stat. § 48.424(4).

255 Wis. 2d 170, ¶¶21-22.

¶60 During the fact-finding phase, "the parent's rights are paramount." <u>Id.</u>, ¶24 (quoting <u>Evelyn C.R.</u>, 246 Wis. 2d 1, ¶22). Thus, parents in the fact-finding phase of termination of parental rights proceedings require heightened legal safeguards to prevent erroneous decisions. <u>Shirley E.</u>, 298 Wis. 2d 1, ¶24.

24

¶61 One of the purposes of Chapter 48, the Children's Code, is to provide for procedures through which all interested parties are assured fair hearings that enforce their legal rights. Wis. Stat. § 48.01(1)(ad). The legislature intended to be expansive in its according of legal rights to parents. Shirley E., 298 Wis. 2d 1, ¶43. Therefore, parents must be provided with fundamentally fair procedures. See Julie A.B., 255 Wis. 2d 170, ¶22 (quoting Santosky v. Kramer, 455 U.S. 745, 753 (1982)).

¶62 There are problems inherent in restarting the half-completed hearing that render the circuit court's remedy fundamentally unfair. To begin, the jury is gone and a new one cannot be empaneled halfway through the fact-finding hearing, years after the first portion of the fact-finding hearing occurred.

¶63 Another problem with restarting the half-completed fact-finding hearing is that Mable K. will require another appointed attorney on remand. The new attorney will be stuck defending Mable K. on a record where the circuit court has twice found her not to be a credible witness. The circuit court's remedy sets the newly appointed attorney, and by extension Mable K., up to fail because the attorney would be restricted to

arguing against a default judgment that the circuit court has previously granted.[13]

¶64  In essence, restarting the half-completed fact-finding hearing shifts the burden to Mable K. to prove that she is not an unfit parent.  Under the circuit court's remedy, Mable K. would be forced to rebut Dane County's case from a hearing that is now approximately two years old.  The circuit court's remedy conflicts with the requirement that the government bears the burden to show that grounds exist for the termination of parental rights, and that the parent should have a "full complement of procedural rights."  Julie A.B., 255 Wis. 2d 170, ¶24.

¶65 Holding the remainder of the fact-finding hearing before the circuit court also appears contrary to the heightened safeguards envisioned by the legislature for termination of parental rights proceedings.  Wisconsin Stat. §§ 48.31(2) and 48.424(2) provide Mable K. with a statutory right to a jury trial if she properly demands one.[14]  None of the parties dispute

---

[13] By setting any new attorney up to fail, the circuit court's remedy defies the principle that the statutory right to counsel includes the right to effective counsel.  See Shirley E., 298 Wis. 2d 1, ¶¶36-39 (quoting A.S. v. State, 168 Wis. 2d 995, 1003, 485 N.W.2d 52 (1992)).

[14] Wisconsin Stat. § 48.31(2) provides that a fact-finding hearing shall be to the court "unless the . . . child's parent . . . exercises the right to a jury trial by demanding a jury trial at any time before or during the plea hearing." Wisconsin Stat. § 48.424(2) additionally provides that fact-finding hearings in termination of parental rights proceedings "shall be conducted according to the procedure specified in s. 48.31 . . . ."

that Mable K. properly demanded a jury for the fact-finding hearing addressing the grounds for termination. Yet the circuit court's remedy would take away that right.

¶66 The record is unclear as to what authority the circuit court employed in denying the statutory right to a jury. There is nothing in the record to suggest that Mable K. waived her right to a jury. The circuit court's grant of a default judgment cannot be a default judgment entered under Wis. Stat. § 806.02(5), which allows for a default judgment for non-appearance at trial. Mable K. appeared personally at the first day of the fact-finding hearing and Attorney Lehner appeared on her behalf on the day she was late for court. Furthermore, no other provisions of the default judgment statute apply because Mable K. appeared in the action and fully participated until she was late on the second day of the fact-finding hearing.

¶67 Arguably, the circuit court could have determined that the statutory right to a jury was forfeited and granted a default judgment as a sanction for violation of a court order pursuant to Wis. Stat. § 805.03.[15] The record, however, is

---

[15] Wisconsin Stat. § 805.03 states the following:

For failure of any claimant to prosecute or for failure of any party to comply with the statutes governing procedure in civil actions or to obey any order of court, the court in which the action is pending may make such orders in regard to the failure as are just, including but not limited to orders authorized under s. 804.12(2)(a). Any dismissal under this section operates as an adjudication on the merits unless the court in its order for dismissal otherwise specifies for good cause shown recited in the order. A

27

unclear.  That statute was never cited by the circuit court or any attorney.

¶68 In fact, the words "sanction" or "forfeiture" are nowhere to be found in the transcripts of the fact-finding hearing or postdisposition motion hearing as they relate to Mable K.  When asked at oral argument whether the record shines any light on our inquiry into the procedures employed by the circuit court when it entered the default judgment finding that grounds existed to terminate Mable K.'s parental rights, Dane County admitted that the record was "murky," despite the fact that the attorney for Dane County had "read [the transcript] over twenty times."

¶69 Even if the circuit court determined that Mable K. forfeited her right to a jury and granted a default judgment as a sanction, Wis. Stat. § 805.03 limits the sanctions that a circuit court may impose for failure to comply with court orders to those that are "just."  See also Indus. Roofing Servs., Inc. v. Marquardt, 2007 WI 19, ¶43, 299 Wis. 2d 81, 726 N.W.2d 898. In order for a sanction dismissing a civil case to be "just," the non-complying party must act "egregiously or in bad faith." Id.; Schneller v. St. Mary's Hosp. Med. Ctr., 162 Wis. 2d 296, 311-12, 470 N.W.2d 873 (1991).  The Shirley E. court applied

---

dismissal on the merits may be set aside by the court on the grounds specified in and in accordance with s. 806.07. A dismissal not on the merits may be set aside by the court for good cause shown and within a reasonable time.

that requirement to default judgments at fact-finding hearings in termination of parental rights proceedings.   298 Wis. 2d 1, ¶13 n.3.

¶70  Where a circuit court concludes that a party's failure to follow court orders, though unintentional, is "so extreme, substantial and persistent" that the conduct may be considered egregious, the circuit court may make a finding of egregiousness.  Hudson Diesel, Inc. v. Kenall, 194 Wis. 2d 531, 543, 535 N.W.2d 65 (Ct. App. 1995).  Conversely, a party may also act in bad faith, which by its nature cannot be unintentional conduct.  Id.  To find that a party acts in bad faith, the circuit court must find that the noncomplying party "intentionally or deliberately" delayed, obstructed, or refused to comply with the court order.  Id.

¶71 Although the circuit court at the postdisposition motion hearing described Mable K.'s conduct as egregious and in bad faith in retrospect, it made no reference to egregiousness or bad faith when the default judgment finding that grounds existed to terminate Mable K.'s parental rights was granted. Likewise, there was no analysis as to whether Mable K.'s conduct was "extreme, substantial and persistent."  Hudson Diesel, 194 Wis. 2d at 543.  Any analysis of whether Mable K.'s conduct "intentionally or deliberately" delayed, obstructed, or refused

to obey the court order is also absent from the record.[16] <u>Id.</u> Had the record clearly indicated that the default was imposed as a sanction, then our analysis would be different.

¶72 Under these facts, the only fundamentally fair remedy is a new fact-finding hearing. A new fact-finding hearing honors the intent of the legislature by providing Mable K. with heightened legal safeguards. <u>Shirley E.</u>, 298 Wis. 2d 1, ¶24. It provides Mable K. with the only remedy that can assure a fair hearing that recognizes and enforces Mable K.'s statutory rights to an attorney and to a jury. <u>See</u> Wis. Stat. § 48.01(1)(ad).

¶73 Additionally, a new fact-finding hearing avoids the problems discussed above that are inherent in trying to renew the fact-finding hearing in mid-stream. A new jury may be empaneled if Mable K. chooses to demand one. Her new attorney may act on her behalf unfettered by the events of the first part of the fact-finding hearing that occurred approximately two years in the past. Unlike the circuit court's remedy, a new fact-finding hearing places the burden on Dane County to prove the allegations in the amended petitions. We therefore conclude that the circuit court's remedy is fundamentally unfair here.

V

¶74 In sum, we reverse and remand for a new fact-finding hearing. We conclude, and the circuit court has acknowledged,

---

[16] The dissent appears to conclude that Mable K.'s conduct was "egregious" in failing to timely appear in court on the second day of the fact-finding hearing. Dissent, ¶1. As we previously stated, we need not and do not address the egregious conduct argument. <u>See</u> <u>supra</u> note 8.

that it erroneously exercised its discretion when it entered a default judgment finding that grounds existed to terminate Mable K.'s parental rights after barring her attorney from offering additional evidence.  It also erred when it granted the default judgment before taking evidence sufficient to establish the grounds alleged in the amended petitions.  We further conclude that the circuit court's remedy for correcting the errors is fundamentally unfair under the facts of this case.[17]

¶75 Accordingly, we reverse and remand to the circuit court for a new fact-finding hearing to be heard by a jury if Mable K. timely demands one.  On remand, the new fact-finding hearing is to be held at the earliest reasonable opportunity.

*By the Court.*—The decision of the court of appeals is reversed, and the cause is remanded to the circuit court for a new fact-finding hearing.

---

[17] If grounds for termination are found and Mable K. is determined to be unfit at the fact-finding hearing, the matter will then proceed to a dispositional hearing.

¶76 ANNETTE KINGSLAND ZIEGLER, J. *(dissenting).* I respectfully dissent from the majority opinion, which concludes that the circuit court must hold an entirely new jury trial on all of the issues in this case when it is Mable K. who is solely responsible for her own egregious and volitional failure to appear in court. Because of the majority's conclusion, a circuit court's authority to enforce its orders is diminished, a non-appearing party's behavior is rewarded, and at least two children's lives continue to hang in the balance. Our system of justice is designed to do better.

¶77 Mable K. chose not to come to court on the second day of a fact-finding hearing in front of a jury. She knew when she was to appear, but she chose not to follow the circuit court's order. Accordingly, I conclude that the trial court did not erroneously exercise its discretion when it vacated the default judgment and instead, sanctioned Mable K. for her egregious behavior by ordering that the remainder of the evidence would be heard as a court trial. The circuit court was not unreasonable in concluding that Mable K. relinquished the right to a jury trial when she chose not to appear before the jury that had been impanelled.

¶78 Curiously, the majority opinion rests its conclusions on the hypothetical scenario of default judgment remaining in place against Mable K. However, the default judgment was vacated. It is not before this court. Nonetheless, the majority opinion concludes that because default judgment once was granted, the rules of State v. Shirley E., 2006 WI 129, 298

1

Wis. 2d 1, 724 N.W.2d 623, and Evelyn C.R. v. Tykila S., 2001 WI 110, 246 Wis. 2d 1, 629 N.W.2d 768, have been irreparably violated. The majority opinion errs: first, by ducking the issue this case actually presents, i.e., whether the circuit court erroneously exercised its discretion by sanctioning Mable K.'s egregious conduct by ordering that the trial be continued as a bench trial; and second, by misapplying the opinions it cites, given the facts of this case.

¶79 In short, the majority opinion is based on a factual fiction that leaves a circuit court no ability to sanction a party who egregiously disobeys a court order to appear for the second day of a jury trial at which grounds for termination are being adjudicated. Instead, the majority rewards such a party. The majority's analysis leaves the tail wagging the dog.

¶80 I conclude that the circuit court reasonably exercised its discretion when it vacated the default judgment and sanctioned Mable K. for her egregious conduct by reconvening the termination of parental rights (TPR) proceeding as a trial to the court, rather than selecting a second jury to replace the jury that would have heard the termination proceeding if Mable K. had appeared.

¶81 I also conclude that under Evelyn C.R., when a default judgment is reviewed, we are to determine whether the circuit court heard sufficient evidence on the grounds in the petitions before it granted default. Unlike Evelyn C.R., Dane County had presented nearly all of the evidence in its case-in-chief before the court sanctioned Mable K. by granting a default judgment due

2

to her failure to appear before the jury. I further conclude that under Shirley E., Mable K.'s right to counsel was not violated because her attorney substantively participated in the proceedings.

¶82 There are and should be consequences for a party who, without excuse, fails to appear for trial. Mable K. deserves a fair trial, but these children deserve stability and security. Isaiah H. and May K. remain innocent victims who now must wait even longer for a conclusion in this matter. Instead of considering that this case also involves two young children, the majority accepts review of a non-final order and sends this case back for the selection of a second jury to hear the TPR proceeding. In so doing, the majority sends a message to parties who do not like the way a trial is going: do not show up for the second part of the trial. You get a "do over." The manner in which the majority reaches this determination is unprecedented and, for these reasons, I respectfully dissent.

## I. THERE IS NO DEFAULT JUDGMENT TO REVIEW

¶83 Procedurally, Mable K.'s appeal is an attack on a non-final order, and we should not have accepted review. The majority opinion grants an entirely new jury trial when there has been no final order in the case below.

¶84 The sanction currently before the court is the continuation of the fact finding as a bench trial. This sanction arose out of a fact-finding hearing that commenced on September 13, 2010. Mable K. appeared for the first day of the

3

hearing.[1]  However, she chose not to appear at the time set for the second day of the hearing, despite being court ordered to do so and being verbally reminded when to appear.  Because of her choice, the circuit court initially entered default judgment against Mable K., finding that there were grounds to terminate her parental rights.  The circuit court then scheduled a dispositional hearing for January 3, 2011.  At the dispositional hearing, the circuit court terminated the parental rights of Mable K., Wesley J., and Lee H.

¶85  After the dispositional hearing on January 3, 2011, Lee H. and Mable K. both appealed; Wesley J. did not.  The court of appeals issued a decision upholding the termination of parental rights for Lee H.  The court of appeals remanded the case to the circuit court to determine whether the circuit court had erroneously entered default judgment against Mable K.

¶86  On remand, the circuit court (1) vacated the orders terminating her parental rights,[2] and (2) returned Mable K. back to the fact-finding hearing, before default was granted.  Mable K. is currently in a position to have counsel represent her and present evidence, testimony, and witnesses.  No final fact

---

[1] There are two parts to a TPR case.  The first part is the fact-finding hearing, where the jury or the court determines whether there are grounds to terminate the parental rights. Wis. Stat. § 48.424.  The second part is a dispositional hearing, where the court determines whether TPR is in the child's best interest.  Wis. Stat. § 48.427.

[2] We do not pass judgment today on whether the trial court was correct in its vacation of the order terminating Mable K.'s parental rights.

4

finding has been completed, and no final order or judgment exists because the circuit court vacated the default judgment.

¶87 Appeals in TPR cases, under Wis. Stat. § 809.107, can be taken from "an order or judgment" under Wis. Stat. § 48.43. Because there was no final order in place, the court of appeals concluded that neither party could appeal as a matter of right, and it was not "inclined to grant leave" to appeal. Cf. Wis. Stat. § 808.03(1); Wick v. Mueller, 105 Wis. 2d 191, 195-98, 313 N.W.2d 799 (1982) (concluding that an order for a new trial in a civil case is not appealable as a matter of right because it does not dispose of the entire matter).

¶88 It is quite unusual, if not unprecedented, for this court to take such an appeal in a TPR case, where there is no order or judgment to review. Nonetheless, despite there being no final order in place, the majority determines that Mable K. is entitled to the extraordinary relief of a second jury to replace the previous jury that Mable K. chose not to appear before beyond the first day of testimony. Curiously, the majority concludes that the circuit court "erroneously exercised its discretion when it entered a default judgment" because the default "depriv[ed] her of her statutory right to an attorney," and because the default was granted before Dane County "establish[ed] the grounds alleged in the amended petitions." See majority op., ¶¶51, 57.

¶89 By repeatedly discussing a default judgment that does not exist, the majority opinion ducks the actual issue this case presents, i.e., whether the circuit court erroneously exercised

5

its discretion in sanctioning Mable K.'s egregious conduct by ordering that the trial will be continued as a bench trial.

## II. FAMILY BACKGROUND

¶90 Notably absent from the majority opinion is any meaningful discussion of the court record concerning the family background, repeated attempts to reunite the children with their mother, and failure of Mable K. to actively engage in the children's upbringing. The majority opinion leaves Isaiah H. and May K. to continue hanging in the balance, neglecting appropriate consideration of the children's interests, and instead, affords considerable accommodation to a parent who has not engaged in her children's lives for years and who, without any reasonable excuse, did not timely attend the second day of the jury trial at which grounds to terminate her parental rights were being adjudicated. According to the record before this court, the lives of these children have hung in the balance for far too long.

¶91 The majority opinion almost portrays Mable K. to be an innocent victim of circumstance. A review of the record reflects that she has had opportunity after opportunity to parent these children. The record reflects that in January 2007, both of Mable K.'s sons, Samuel C.,[3] age three, and Isaiah H., age five and one-half at the time, were determined to need

---

[3] Mable K.'s parental rights to Samuel C. were terminated in a prior TPR case. The transcript in this case indicates that Mable K. arrived three hours late to that proceeding.

6

care that no one could provide.[4] The government placed both boys in out-of-home care. May K., Mable K.'s third child, was placed at her current foster home shortly after May K. was born in November 2008, because Mable K. was allegedly not able to meet her daughter's needs consistently or keep her safe. At the hospital, staff members raised concerns about Mable K.'s ability to care for a newborn.[5] The social worker opined that Mable K. would not be able to meet the demands of a newborn baby. May K., now over four years old, has lived outside of her parental home consistently since she was born.

¶92 All of the biological parents in this case have significant criminal histories, which, in and of itself, is not grounds for termination. However, the current record is replete with allegations of their impaired ability to be available for their children, and to provide for the children's basic needs, stable housing, medical needs, and personal needs. Lee H., the adjudicated father of Isaiah H., was incarcerated at the time Isaiah H. was placed in foster care, and he was again incarcerated in January 2010. He has six criminal convictions. Mable K. has at least two previous convictions for forgery, and

---

[4] Isaiah H.'s father, Lee H., has had very little direct contact with Isaiah H., has been unavailable, and has been on the run or incarcerated. After he was rearrested in January 2010, and placed in Dodge Correctional Institution, he had a couple of phone contacts with a social worker in March and April 2010. His parental rights have been terminated and are not the subject of this appeal.

[5] The hospital staff observed Mable K. talking on the phone and ignoring the baby. On one occasion, Mable K. left the hospital room while the baby was in Mable K.'s hospital bed. It seemed as if Mable K. forgot that the baby was there.

was on probation at the time her sons were placed in foster care. Initially, Mable K. did not disclose the name of May K.'s father, Wesley J., purportedly because she was concerned that Dane County would judge him by his previous criminal record. Wesley J. was convicted of second-degree sexual assault of a child and several other violent crimes.[6]

¶93 The record before us reflects that Mable K. and her family have had many contacts with the Dane County Department of Human Services (Dane County) and have been the subject of approximately 16 referrals to Dane County. In short, the referrals alleged that the children were in need of protection or services, that they had unaddressed health problems, and that they were neglected.

¶94 As part of the services provided by Dane County, Mable K. completed a psychological evaluation in 2007, and Dane County attempted to provide her with mental health treatment. Mable K. remains the only biological parent available to take care of the two children at issue, as the parental rights of both biological fathers have been terminated. The record indicates that on numerous occasions, Mable K. would fail to show up for a confirmed family contact or would simply cancel the family contact. According to the court record, before the start of this case on March 24, 2010, Mable K.'s last contact with her children was on December 17, 2009. Following that date, she purportedly missed three weekly, scheduled family contacts

---

[6] Wesley J.'s parental rights have been terminated and are not the subject of this appeal.

despite being told that she needed to have a meeting to discuss the missed family contacts. Nonetheless, the record indicates that she failed to request or arrange such a meeting, and her excuse for not making the scheduled contacts was that she had many appointments and that it was none of Dane County's business what she was doing. At best, Mable K. has had sporadic contact with her children.

¶95 According to Dane County, Mable K. did not make consistent progress in meeting the specified court ordered conditions for the return of her children. She did not make appropriate planning for the children or work closely towards permanent placement with the assigned Dane County social worker or social service specialist. The reunification team was involved with Mable K. and her children from mid-January 2009, until April 23, 2009, at which time it was clear that Mable K. was not ready for the children's transition to her full-time care. Mable K. was unable to consistently and appropriately address the children's emotional needs and challenging behavior. During her time with her children, Mable K. appeared to be more focused on meeting her own personal needs rather than those of her children. Dane County explained that it attempted to avoid terminating Mable K.'s parental rights. She was provided with the opportunity to utilize a variety of resources, attend meetings, participate in evaluations, attend court hearings, and work with specialists to improve her parenting skills. Nonetheless, the record reflects that Dane County filed two TPR petitions on March 24, 2010, which alleged that both Isaiah H.

9

and May K. were children in need of protection or services (CHIPS).  An amended petition was filed on June 1, 2010, which also alleged that both children had been abandoned.

¶96 Despite her repeated contact with the system and the gravitas of the subject matter, on the second day of the jury trial, Mable K. found it more important to "get me some breakfast" because she was "real kind of sick" from the proceedings and she "was just tired."

### III. THE CIRCUIT COURT DID NOT ERR

### A. The Conduct Was Egregious

¶97 The circuit court did not erroneously exercise its discretion in concluding that Mable K. demonstrated egregious conduct by failing to appear at the second day of the fact-finding hearing.  A sanction was warranted.

¶98 Notwithstanding that there is no default judgment to review in this case, the majority relies on Evelyn C.R. to support its conclusion that the default judgment was an improper remedy.  However, unlike the majority, I undertake an analysis of whether a sanction was justified by Mable K.'s failure to appear, and then I determine whether the circuit court erroneously exercised its discretion when it sanctioned Mable K. by continuing the TPR proceeding as a bench trial rather than impanelling a second jury.  This analysis leads me to conclude that Mable K.'s conduct was egregious and that the circuit court did not erroneously exercise its discretion in sanctioning Mable K. by reconvening the TPR proceeding as a trial to the court, rather than selecting a new jury to replace the jury that would

10

have heard the termination proceeding if Mable K. had timely appeared.

¶99 A circuit court has inherent and statutory power to sanction parties who fail to obey court orders. Evelyn C.R., 246 Wis. 2d 1, ¶17. Under this authority, a circuit court may sanction a party who fails to comply with a court order.[7] Id. The decision to sanction a party is within the sound discretion of the circuit court. Id., ¶18; Oostburg State Bank v. United Sav. & Loan Ass'n, 130 Wis. 2d 4, 11, 386 N.W.2d 53 (1986). An appellate court reviews a circuit court's discretionary determination for an erroneous exercise of discretion. Evelyn C.R., 246 Wis. 2d 1, ¶18. A reviewing court will affirm the circuit court's exercise of discretion if the circuit court has examined the relevant facts, has applied a proper standard of law, and has used a demonstrated, rational process to reach a conclusion that a reasonable judge could reach. Loy v. Bunderson, 107 Wis. 2d 400, 414-15, 320 N.W.2d 175 (1982).

¶100 Before a circuit court may sanction a party who failed to comply with a court order, the party's conduct must be

---

[7] Wisconsin Stat. § 802.10(7), "Sanctions," provides that "[v]iolations of a scheduling or pretrial order are subject to ss. 802.05, 804.12 and 805.03." Wisconsin Stat. § 805.03, "Failure to prosecute or comply with procedure statutes," provides in part: "[F]or failure of any party to . . . obey any order of court, the court in which the action is pending may make such orders in regard to the failure as are just, including but not limited to orders authorized under s. 804.12(2)(a)." Wisconsin Stat. § 804.12(2)(a)3., "Failure to comply with order," gives the court the power to provide "just" sanctions for failure to obey an order, including "rendering a judgment by default against the disobedient party."

11

egregious or in bad faith. Shirley E., 298 Wis. 2d 1, ¶13 n.3. Failure to comply with a circuit court scheduling order without a clear and justifiable excuse is egregious conduct. Indus. Roofing Servs., Inc. v. Marquardt, 2007 WI 19, ¶43, 299 Wis. 2d 81, 726 N.W.2d 898. "Egregious" conduct has been defined as "extreme, substantial, and persistent." Id. While the record on appeal must reflect the circuit court's reasoned application of the appropriate legal standard to the relevant facts, an appellate court need not remand for such a determination if the circuit court's finding was implicit. Englewood Cmty. Apartments Ltd. P'ship v. Alexander Grant & Co., 119 Wis. 2d 34, 39 n.3, 349 N.W.2d 716 (Ct. App. 1984) ("[A] remand directing the trial court to make an explicit finding where it has already made unmistakable but implicit findings to the same effect would be both superfluous and a waste of judicial resources.").

¶101 After Dane County filed the petition to terminate her parental rights, Mable K. was ordered to appear personally at all proceedings in this case by a court order dated May 24, 2010. Nearly six months later, a fact-finding hearing before a jury commenced on September 13, 2010. Mable K. appeared for the first day of the jury trial, but chose not to appear for the second day of trial at the time when she was instructed to appear.

¶102 Mable K. is not an innocent victim of circumstance who was unfairly sanctioned. The circuit court entered an order requiring that Mable K. personally appear at all hearings. The

12

circuit court took extra effort to remind her at the conclusion of the first day of trial to be in court the next day before 9 a.m. Mable K. ignored the circuit court's directive and did not come to court at 9 a.m. to defend herself in a matter where her children could be taken away forever.

¶103 The circuit court and counsel undertook efforts to get her to court. She did not come to court when she was instructed to be there or even when she said that she would be there. When she did not show, the circuit court, the jury, and counsel waited for her.

¶104 Specifically, her attorney (Attorney Lehner), who had talked with Mable K. earlier that morning, later called her to persuade her to come to court. Mable K. told Attorney Lehner that she would ride her bike to court and be there within a half-hour, by 9:45 a.m. By 10:35 a.m., she still had not arrived. At that point, the circuit court concluded that a sanction was warranted, and it found Mable K. in default on both of the allegations, CHIPS and abandonment.[8]

---

[8] This court has previously rejected the argument that a parent has an absolute right to a jury trial under the TPR statutes. Steven V. v. Kelley H., 2004 WI 47, ¶33, 271 Wis. 2d 1, 678 N.W.2d 856. A parent's right to a jury trial in TPR proceedings is statutory, not constitutional. Id., ¶4. Because TPR proceedings are civil in nature, the general rules of civil procedure are applicable unless Chapter 48 of the Wisconsin Statutes provides a more specific rule. See id., ¶32. The court in Steven V. concluded:

> The circuit court, however, is always responsible for conclusions of law, as is specifically recognized in the TPR statutes. See Wis. Stat. § 48.31(4). If a motion for summary judgment is made and supported as prescribed by Wis. Stat. § 802.08, the circuit court may properly conclude at the fact-finding hearing that

13

¶105 At approximately 10:45 a.m., nearly two hours late, Mable K. finally arrived and counsel moved for relief from the default judgment. The circuit court allowed Mable K. to testify about why she did not appear, and she stated that she was "real kind of sick" from the proceedings, she "was just tired," and she wanted to "get me some breakfast." She acknowledged that Attorney Lehner warned her of the consequences of failing to appear. Mable K. said that she did not sleep well and had just woken up around 9 a.m. She testified that she knew she needed to be at the court by 9 a.m.

¶106 In its initial decision, the circuit court did not explicitly use the word "egregious," but a review of the record

---

there is no genuine issue of material fact in dispute and the moving party is entitled to partial summary judgment on parental unfitness as a matter of law. See Wis. Stat. § 802.08(2).

Id., ¶34. Further, several cases have concluded that a directed verdict pursuant to Wis. Stat. § 805.14(4) applies to TPR proceedings. Id., ¶32 (citing Door Cnty. DHFS v. Scott S., 230 Wis. 2d 460, 465, 602 N.W.2d 167 (Ct. App. 1999); J.A.B. v. Waukesha Cnty. Human Servs. Dep't, 153 Wis. 2d 761, 765, 451 N.W.2d 799 (Ct. App. 1989)). See also Wis. Stat. § 971.04(3) (stating that if defendant is present at beginning of criminal jury trial, then voluntarily absents himself, the trial may proceed without the defendant).

It is also interesting to note that only five states currently allow jury trials in TPR cases. See Wis. Stat. § 48.31(2); Tex. Fam. Code Ann. § 105.002 (West 2012); Okla. Stat. Ann. tit. 10A, § 1-4-502 (West 2012); Wyo. Stat. Ann. § 14-2-312 (West 2012); Va. Code Ann. § 16.1-296 (West 2012); Linda Szymanski, Is a Jury Trial Ever Available in a Termination of Parental Rights Case?, National Center for Juvenile Justice Snapshot, March 2011, Vol. 16, No. 3; James L. Buchwalter, Annotation, Right to Jury Trial in Child Neglect, Child Abuse, or Termination of Parental Rights Proceedings, 102 A.L.R. 5th 227 (2002).

14

makes clear that the court did find her conduct to be egregious. Our court does not require a circuit court to use "magic words" when undertaking a legal analysis and in making findings. Englewood, 119 Wis. 2d at 39 n.3. Furthermore, the court did find that Mable K. was not credible. The court considered her excuses but also noted that Mable K. previously arrived three hours late in the TPR proceeding for her son Samuel C. Indeed, at a hearing on August 26, 2011, the circuit court judge stated:

> It was and, frankly, still is evident to this Court on this record in this Court's view that it is an egregious violation of the Court order given the fact that it was orally issued to Ms. K., it was given to her in written form, she is in a jury trial, . . . the fact that she was reminded when the Court concluded its proceedings the first day of trial on the 13th that she needed to be here a little bit before 9:00, this is egregious to the Court and it is without justifiable basis. It's either egregious or in bad faith . . . but definitely I don't think you even need to use those magic words for those things to in fact be true.

¶107 I agree with the circuit court that Mable K.'s conduct was deserving of a sanction. Although the court did not use the word "egregious" initially, the record reflects that the court found her conduct to be egregious. The circuit court did not erroneously exercise its discretion when it sanctioned Mable K. for her failure to appear.

¶108 The record reflects that the circuit court made several findings to support the sanction for her egregious behavior. The court cited to the following facts: that the order dated May 24, 2010, required Mable K. to appear personally at all hearings; that at the end of the first day of the fact-

finding hearing, the court informed all parties that they needed to be in court shortly before 9 a.m. on the next day; that she had shown up late to a previous TPR proceeding; and that the court did not find her explanation about why she could not have followed the court order credible. In short, Mable K. failed to demonstrate any credible reason for her failure to appear at the time set by the court.

¶109 I conclude that Mable K.'s actions were especially egregious in the context of a TPR trial.[9] It took nearly six months from the time the TPR petition was filed until the time of the trial. The circuit court held eight hearings before the first day of trial, including several hearings based on the petitions, two pretrial conferences, and two motion hearings. The circuit court and the parties all completed substantial pretrial work, much of which is now rendered void by the majority opinion. In addition to the large amount of pretrial work, there was a full day of the fact-finding hearing before Mable K. failed to follow the court's order.[10]

¶110 Mable K. was the witness her attorney would have called, but her failure to appear precluded her attorney from presenting her testimony in an attempt to rebut evidence

---

[9] A circuit court may grant a default judgment in a TPR proceeding for a non-appearing party if, inter alia, there is sufficient evidence to support the grounds for the petition and the default does not violate the party's statutory right to counsel. See infra, parts III.B. and III.C.

[10] The transcripts in this case total 587 pages from the time the petition was filed though the first day of the fact-finding hearing.

presented in support of the petitions to terminate her parental rights.[11] The court and the jury were not required to wait until Mable K. chose to arrive. Mable K.'s conduct was egregious, and a sanction was appropriate. If Mable K. valued a jury trial, she should have appeared for the second day of the trial. That the court chose not to put Dane County to the expense of impanelling a second jury, and instead chose to conclude the fact-finding hearing as a bench trial, is within the circuit court's discretion.

B. Majority Opinion Errs In Its Analysis Of Evelyn C.R.

¶111 The majority claims to rely on Evelyn C.R. to support its determination that a second jury must be impanelled and the trial to begin anew. In my view, because the circuit court had a significant evidentiary record before it, the court did not violate the rule of Evelyn C.R.

¶112 In Evelyn C.R., we held that "the circuit court had the duty at the fact-finding hearing to find by clear and convincing evidence that all of the elements" of the allegations

---

[11] At the postconviction motion hearing on August 16, 2011, Attorney Lehner testified that she intended to call Mable K. to rebut both grounds for termination of her rights that were set out in the petition. Attorney Lehner also testified that she intended to cross-examine Joyce Brown to rebut the CHIPS claim, but Brown was never called as a witness in the fact-finding hearing. The petitioners rested the case as to Mable K. after the testimony of Brenda Blank and Mike Boehm, and Attorney Lehner was allowed to cross-examine both of these witnesses. Further, Dane County asked Attorney Lehner if she would have called any other witnesses on her witness list during the fact-finding hearing, and she stated that she would have called the social workers if the other parties had not already called them. She did not name any other witnesses that she was prevented from calling to testify.

17

in the petition are met. 246 Wis. 2d 1, ¶24. In Evelyn C.R., the court did not hold a fact-finding hearing. Id., ¶9. Instead, the court granted default against the mother, Tykila S., for failure to appear personally, finding her unfit based solely upon allegations in the petition. Id. In Evelyn C.R., the circuit court "had no evidentiary basis to support its finding of abandonment." Id., ¶24.

¶113 By contrast, in Mable K.'s case, the circuit court heard evidence supporting the CHIPS and abandonment claims before it decided to sanction Mable K. Dane County had presented evidence at trial, which was tested by Attorney Lehner's cross-examination. The circuit court made explicit findings that Mable K. was unfit on both grounds. If no further testimony was taken, it is because Mable K. did not come to court to be her own witness. The procedural posture of Evelyn C.R. is clearly distinguishable from the posture of this case at the time that Mable K. was sanctioned by the circuit court.

¶114 For example, unlike Evelyn C.R., the circuit court heard substantial testimony against Mable K., nearly all of Dane County's case-in-chief.[12] On the first day of the fact-finding

---

[12] To establish a CHIPS claim under Wis. Stat. § 48.415(2)(a) "Continuing need of protection or services," the petitioner must prove the following:

1. That the child has been adjudged to be a child . . . in need of protection or services and placed, or continued in a placement, outside his or her home pursuant to one or more court orders under s. 48.345 . . . containing the notice required by s. 48.356(2);

18

hearing, before default was an issue, the circuit court heard testimony from Brenda Blank (Blank), Mable K.'s case worker. First, during Blank's testimony, Dane County introduced orders adjudging both Isaiah H. and May K. as children in need of protection or services and placing them outside of Mable K.'s home. The orders, which were entered as exhibits, contained the notice required by Wis. Stat. § 48.356(2). Second, Blank testified that Dane County "definitely did" make a reasonable effort to provide the services ordered by the court. For example, Mable K. received one-on-one parent education and support, was assigned a social service specialist, worked with a family reunification team, and worked with Blank on specific tasks she could complete to meet the conditions of return. Third, Blank testified that both children had spent more than six months outside of Mable K.'s home. May K. has been continuously outside of the home since she was born, in November of 2008. Isaiah H. has been continuously outside of the home since 2007. Finally, Blank testified that Mable K. "will

---

2. That the agency responsible for the care of the child and the family . . . has made a reasonable effort to provide the services ordered by the court;

3. That the child has been outside the home for a cumulative total period of 6 months or longer pursuant to such orders; and

4. That the parent has failed to meet the conditions established for the safe return of the child to the home and there is a substantial likelihood that the parent will not meet these conditions within the 9-month period following the fact-finding hearing under s. 48.424.

19

absolutely not" meet the conditions for return within nine months of the fact-finding hearing. Blank testified that Mable K. failed to meet a majority of the conditions of return, including maintaining housing, showing interest in the children, maintaining regular visits without canceling, showing that she could properly care for the children, and staying in touch and cooperating with the social worker. Mable K.'s counsel cross-examined Blank.

¶115 The circuit court also heard evidence of the grounds of abandonment[13] before it decided to sanction Mable K. The CHIPS orders introduced during Blank's testimony satisfy the first element of abandonment. Further, it is notable that after Dane County moved for a default against Mable K., the court stated, "I need to have Mr. Boehm on the stand . . . to make the findings related to default on Ms. K. on the abandonment ground." Dane County then called Michael Boehm to testify on the abandonment ground. Boehm testified that Mable K. had failed to communicate with her children for more than three months before the petitions to terminate her parental rights were filed, which satisfies the second element of abandonment. Boehm was also subject to cross-examination by Mable K.'s counsel.

---

[13] One way to establish an abandonment claim under Wis. Stat. § 48.415(1), is for the petitioner to prove:

1. That the child has been placed, or continued in a placement, outside the parent's home by a court order containing the notice required by s. 48.356(2) . . . , and
2. [That] the parent has failed to visit or communicate with the child for a period of 3 months or longer.

20

¶116 Unlike Evelyn C.R., wherein the court heard no evidence, the circuit court here heard nearly all of Dane County's evidence——evidence that was subject to cross-examination——on both grounds before it found Mable K. unfit and sanctioned her. Indeed, "[i]f grounds for the termination of parental rights are found by the court or jury, the court shall find the parent unfit." Wis. Stat. § 48.424(4) (emphasis added).

¶117 The majority opinion unnecessarily extends the rule in Evelyn C.R. such that it undermines the role of a circuit court in TPR proceedings. The majority opinion does not evaluate the evidence, does not give proper deference to the circuit court's exercise of its discretion, and ultimately does not evaluate whether grounds were established.

¶118 According to the record, Mable K., the absent parent, had the opportunity to present testimony to rebut the evidence that was presented on the grounds alleged as the basis for finding her unfit. She chose not to come to court where a jury had been impanelled, and it is not her attorney's fault that no other witnesses testified that day.

¶119 The majority opinion unnecessarily undercuts a circuit court's authority to sanction a non-appearing parent by trying the case to the court rather than impanelling a second jury. The majority opinion does so because it never analyzes whether the sanction the circuit court chose was within its discretion. Cf. Shirley E., 298 Wis. 2d 1, ¶70 (Prosser, J., concurring) ("[T]his court's decision to protect a parent who did not care

21

enough to appear and defend herself, seriously undercuts the authority of circuit judges to enforce their orders."). Instead, the majority opinion pretends that the default judgment that has been vacated still exists.

¶120 Not only is giving Mable K. a second jury trial unjustified, but it fails to consider the children's interests. The negative impact the majority opinion has on May K. and Isaiah H. adds insult to injury. After all, these children have not lived with their biological mother for years. This petition was filed nearly three years ago, on March 24, 2010, and was filed based on allegations that these children are in need of protection or services and that they have been abandoned by Mable K. and the biological fathers. The children must now wait even longer to resolve their family status. It is not Mable K. who was treated unfairly in these proceedings, it is her children.

### C. Majority Opinion Errs In Its Analysis Of Shirley E.

¶121 The majority opinion also concludes that Mable K. was deprived on her statutory right to counsel under the rule of Shirley E. See majority op., ¶51. However, unlike Shirley E., Mable K. had a lawyer and still has a lawyer. It is clear from the record that counsel was a zealous advocate for Mable K. throughout the pretrial proceedings and at trial. Counsel vigorously advocated for Mable K. even after she did not appear. Even now, Mable K. and her lawyer can mount a defense at the unfinished trial. Because the circuit court vacated the default judgment, the case awaits conclusion at the continued trial.

22

¶122 The majority relies on Shirley E. to conclude that Mable K. was wrongfully deprived of counsel and a second jury trial is required. Notably, however, the procedural posture in Shirley E. and the procedural posture of the case today are quite different. In Shirley E., the court granted a default against Shirley E. because she violated a court order personally to appear. 298 Wis. 2d 1, ¶13. However, unlike counsel for Mable K., counsel for Shirley E. was not allowed to participate in any way at the hearings. Id., ¶18. This court held that the circuit court violated Shirley E.'s statutory right to counsel because it granted a default judgment against her and also dismissed Shirley E.'s counsel from the fact-finding and dispositional hearing before any evidence was taken. Id., ¶56. Without counsel or Shirley E. present, the court found that Shirley E. was unfit, and it terminated her parental rights.

¶123 Simply stated, Shirley E. involved a total denial of counsel at the fact-finding and dispositional phases, which is not even remotely similar to the facts presented in this case. To be clear, Mable K. chose not to follow the court's order that she appear by 9 a.m. Instead, she slept late, stayed home, and ate breakfast, all the time knowing that she was required to be in court for the continuation of her trial where she was to be her own witness. Mable K. should be required to live with the consequences of the choices she made that morning. Mable K. absented herself from the trial, and because counsel had no other scheduled witnesses until the third day of trial, anticipating that Mable K.'s testimony would fill the second day

23

of trial, Mable K. created the problem of counsel having no one to call on the second day of trial. See supra note 11.

¶124 Moreover, unlike Shirley E., Mable K.'s attorney did participate substantively in pretrial matters and at the hearings. On the first day of the fact-finding hearing, counsel gave an opening statement that summarized why Mable K. should not be found unfit. Also on the first day of the hearing, Dane County presented testimony of Brenda Blank, one of Mable K.'s case workers. During that testimony, Attorney Lehner objected to hearsay at least five times and her objections were sustained several times. On the second day of the hearing, even though Mable K. was not present, the trial continued. Attorney Lehner cross-examined Blank, who testified regarding the CHIPS claim. Later in the hearing, Attorney Lehner cross-examined Dane County's witness Michael Boehm, a social service specialist, who testified regarding the abandonment claim.

¶125 After Mable K. arrived, the circuit court allowed her to testify as to why she was late, and Attorney Lehner argued on Mable K.'s behalf that the circuit court should vacate the default judgment. Counsel was present and vigorously defended Mable K. with respect to the sanction imposed. After Mable K.'s testimony, the circuit court asked Attorney Lehner whether she had any further evidence or witnesses to present. Attorney Lehner responded that she did not. The circuit court did not take further evidence against Mable K.; Dane County and the guardian ad litem rested immediately after Mable K. testified.

24

¶126 Mable K. and Attorney Lehner appeared at the dispositional hearing on January 3, 2011, where Attorney Lehner once again cross-examined Dane County's witnesses. At the end of one witness's testimony, the circuit court asked Attorney Lehner if she had further questions, and she responded that she did not. The circuit court then asked all of the parties if they had any further evidence that they would like to produce, and Attorney Lehner responded "No, Your Honor."

¶127 Unlike in Shirley E., where the circuit court dismissed Shirley E.'s attorney from the courtroom before any evidence was presented, Attorney Lehner actively participated in the trial and vigorously defended Mable K.'s actions. Based on the extensive participation of Attorney Lehner in this case, I would conclude that Mable K.'s right to counsel was not violated under the standards this court set in Shirley E.[14]

¶128 For the foregoing reasons, I conclude that the circuit court did not err; accordingly, I respectfully dissent.

¶129 I am authorized to state that Justices PATIENCE DRAKE ROGGENSACK and MICHAEL J. GABLEMAN join this dissent.

---

[14] At the Machner hearing, Attorney Lehner testified that she did not have witnesses available and that Mable K.'s absence left her without any viable witnesses through which she could present evidence. Counsel testified that she did not have advanced notice that Mable K. would not appear. If trial counsel was left with no option, that was Mable K.'s own doing. Mable K. testified that Attorney Lehner had explained the effects of a default judgment. In other words, Mable K. created her own prejudice by failing to appear.

25